CENTRAL CALIFORNIA CANNERIES CO. et al. v. DUNKLEY CO.*

(Circuit Court of Appeals, Ninth Circuit.  October 1, 1917.)

No. 2915.

1. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—DEVICE FOR PEELING PEACHES.
    The Dunkley patent, No. 1,104,175, for a device for peeling peaches and other fruit, *held* not invalid for priority of invention and use by others, but valid, and also infringed.

2. PATENTS ⬤⟿324(5)—SUIT FOR INFRINGEMENT—REVIEW ON APPEAL.
    The finding of a District Court in favor of the validity of a patent will not be reversed, where it depends on conflicting evidence or the credibility of witnesses.

Appeals from the District Court of the United States for the Second Division of the Southern Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Consolidated suits in equity by the Dunkley Company against the Central California Canneries Company, the Griffin & Skelley Company, the J. C. Ainsley Packing Company, the Anderson-Barngrover Manufacturing Company, J. F. Pyle & Son, Incorporated, the Hunt Bros. Company, and the Sunlit Fruit Company, a corporation.  Decrees for complainant, and defendants appeal.  Affirmed.

Certiorari denied, 38 Sup. Ct. 134, 245 U. S. 668, 62 L. Ed. ——.

Suits for injunction restraining the infringement of plaintiff's patent for a device for peeling peaches and other fruit, and for a decree that plaintiff recover from defendants the profits realized by them and the damages sustained by plaintiff by reason of said infringement.  Decree for plaintiff.  Defendants appeal.

On August 6, 1915, appellee filed its bill of complaint against the appellant Central California Canneries Company, alleging that plaintiff is the owner of letters patent No. 1,104,175 for an invention and device for peeling peaches and other fruit, and that defendant has made and used, and is now engaged in using, infringing machines, to the great and irreparable injury of the plaintiff, and praying an injunction restraining such infringement of plaintiff's patent, and a decree that plaintiff recover from defendant the profits realized by defendant, and the damages sustained by plaintiff by reason of said infringement, together with costs.

Defendant answered, raising the issue of priority of conception or invention and use of the device in suit, the validity of the claims sued on being conceded, as was the fact that defendant's device was within those claims.  The answer contains the further allegation that plaintiff is guilty of iniquitous conduct in suppressing evidence of prior usage by means of a contract with the California Fruit Canners' Association, whereby, in consideration of a license under plaintiff's letters patent for the remainder of the term thereof, the California Fruit Canners' Association agreed not to assist any one in defending any suit brought for the alleged infringement of said letters patent, nor to give or furnish to any such party any information or data relative to any prior usage thereof.

When the case came on for trial it was, by stipulation of the parties, consolidated with the seven other cases embraced in this appeal, which are instituted by the same plaintiff against various other fruit-canning companies,

and involve substantially the same issues. Evidence was introduced on behalf of all parties, and thereafter the court entered an interlocutory decree in each suit, upholding the validity of plaintiff's patent, finding that the same had been infringed by the defendants' machines, and awarding plaintiff an injunction. Each decree further awarded to plaintiff the profits realized by the defendant and the damages sustained by plaintiff by reason of the infringement, and, for the purpose of ascertaining and stating the amount of such profits and damages, the matter was referred to a master. From these decrees in favor of plaintiff, the defendants bring the present appeals in the eight consolidated cases.

William K. White, of San Francisco, Cal., and Frederick S. Lyon and Kemper B. Campbell, of Los Angeles, Cal., for appellants.

John H. Miller, of San Francisco, Cal., and Fred L. Chappell, of Kalamazoo, Mich., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] The question of infringement is not important in the consideration of this case. The main issue is the validity of the plaintiff's patent; that validity depending upon the priority of conception and use of the device, both questions of fact. The defendants set up three anticipating devices, the Beekhuis, the Vernon, and the Grier.

Beekhuis made application for a patent for an "apparatus for removing the skin from fruit" on May 25, 1904, and patent thereon was granted September 3, 1907. The plaintiff Dunkley applied for a patent for a "machine for peeling peaches and other fruit" on November 29, 1904. His application was amended at various times, and on July 13, 1909, the Commissioner of Patents declared an interference between his application and the patent previously issued to Beekhuis on September 3, 1907. The award of priority of invention and use was finally given to the plaintiff Dunkley by the Patent Office, and that award sustained by the Court of Appeals of the District of Columbia, and patent granted to him on July 21, 1914. It is not sought by the defendants to establish the Beekhuis patent in this suit, but that patent is relied upon as showing a device in use and patent applied for before the plaintiff made his application.

The full proofs in the interference proceedings are not in evidence, but portions thereof appear in the file wrapper and contents of plaintiff's patent introduced by the defendants, disclosing the various rulings of the Patent Office tribunals and the many amendments made in the claims to conform thereto. It appears to have been under consideration by Patent Office officials for five years after an interference was declared, and careful investigation made into each claim before patent was granted. There seemed to be no doubt in the minds of these officials, at the conclusion of the investigation, that the plaintiff was the first to conceive the idea and reduce it to successful practice; but there was some question whether he was entitled to make certain claims for "means for directing peeling jets of water upon said fruit." Although the water was used in this form from the time of the first practical

construction of a peeling machine by both Beekhuis and Dunkley, neither of them used the words "peeling jets of water" in their first specifications of claims. Beekhuis was the first to include them in an amendment to his application, and Dunkley copied them later on for the express purpose of having an interference declared. In each machine the fruit passes through a receptacle, where it is subjected to a bath in a heated solution of lye, which disintegrates the skin.

In the Dunkley device the fruit is then delivered onto an endless belt conveyor and passes between rotary brushes for about six feet, the brushes rotating the peach as it is carried along, so that every portion of its surface is subjected to the jets of water which strike the fruit tangentially from perforated pipes arranged along the passage, and driven with such force as to remove the disintegrated skin still remaining upon the peaches, and to cleanse the particles from the brushes. The peaches are advanced in single file, and are thoroughly peeled, cleansed, and cooled, and ready for the cans at the point of exit from the machine. In the Beekhuis device the peaches pass from the lye bath onto a large box screen of wire mesh so arranged as to shake the fruit as it passes over it. Above this shaking screen is arranged a water pipe with transverse slits at intervals, which deliver a broad fan spray or jet of water onto the fruit passing over the screen. A similar spray or jet of water is arranged on the under side also. The fruit is delivered onto this screen in a mass, and dependence is had upon its agitation in the box while advancing, the friction with each other and with the wire screen, and the action of the water jets or sprays during such agitation, for the removal of the disintegrated skin. It was decided that both parties were equally entitled to make the claims for "means for directing peeling water jets upon said fruit," and patent was thereupon issued to Dunkley, priority of conception of the idea and reduction to successful practice having been previously awarded him. We see no reason for reversing this decision, after a careful reading of the testimony.

The Vernon device appears to have been an adaptation of an invention of Baker, Chalker, and others, patented in 1898, for the purpose of cleaning oranges by a brushing mechanism. As early as 1902 Vernon adopted this brushing mechanism as a means for removing the skin from peaches and other fruit, first subjecting the fruit to a bath in a heated solution of caustic soda, then to another in a solution containing alum, and then immersing it in cold water. It was next subjected to a brushing process, but no mention is made of the use of water under such pressure as to form peeling jets, or in fact of any use of water for peeling purposes. Vernon applied for a patent on his device in November, 1902, which was granted in March, 1905; but at the plant in Fresno, where the machines were first used in 1902 and 1903, they appear to have been supplanted by Beekhuis machines in 1904, according to the testimony, not proving satisfactory. The essential feature of the Dunkley device, the application of peeling jets of water to the surface of the peach while in rotation, is not shown in the Vernon device, and it cannot be regarded as anticipatory in either conception or use.

The Grier device was never patented. Grier appears to have been connected with the fruit-canning business for many years, and was familiar with the process of dipping peaches in lye as early as 1891, and thereafter washing them with water. In 1902 he formed a partnership with a Mr. Taylor, and leased a canning plant in Pasadena, where they handled peaches, among other fruits, and from the testimony it would appear that he was considering how to handle a greater quantity, and attempting to devise more efficient means for peeling than the hand method; but the only real experimentation that he made in 1902 was by putting a few peaches in a wire basket and dipping them in the heated lye solution, and then using a hose by hand to wash off the peeling. He says he conceived the idea right then of building a machine to do that work, but there is no testimony to the effect that he did anything in the way of reducing the idea to a practical form, or proving his idea an operative one, until the following summer, 1903, when he built two machines, one for his own plant, and one for another company in Pasadena, not identical with the plaintiff's machine, but embodying the idea of rotation of the peaches as they progressed, and the application of peeling sprays or jets of water. The ideas of Grier and the plaintiff may have been contemporaneous; but there is no evidence of such prior use of the Grier device as to defeat the plaintiff's priority of right. Grier did not apply for a patent for his device, and discontinued the use of his machine when he received notice of Dunkley's claimed infringement.

There is in the record the testimony of one Stewart L. Campbell, who was called as a witness by the defendants in surrebuttal, and who testified that he was employed by the Dunkley Company in constructing machinery from the first of 1902 to December, 1904. According to the testimony of this witness he designed and built, in August, 1903, a peach-peeling table, for which the plaintiff obtained the patent in suit, and this he did without any ideas from Dunkley as to its construction. In other words, his testimony is to the effect that he was the designer of the invention for which Dunkley received a patent. But defendants insist that the testimony of this witness was not introduced to prove that fact, and they refer to their answer as showing that it was not so pleaded as a defense. The purpose of this testimony, they say, was to discredit the claim of Dunkley that he was the inventor, and not to offer the defense that Campbell was the inventor. But the testimony of Campbell upon that question was material and relevant to the issue before the court, and was either true or not true. If true, Dunkley was not the inventor of the device claimed as his invention, and that would end the case. If Campbell's testimony was not true, he was testifying falsely concerning a material and relevant matter, and his testimony would for that reason be wholly rejected. "Falsus in uno, falsus in omnibus."

But the defendants say they offer it only to prove that Dunkley was not the inventor. They stand on the priorities set up in their answer as defenses, namely, the priority of the Vernon patent for a process for peeling fruit and the Grier device for an apparatus used in conducting

that process. They deny the priority of the Dunkley peach-peeling machine, and offer the testimony of Campbell to prove that fact. This they cannot do. They cannot offer this testimony as true to prove à material and relevant fact for one purpose, and discredit it for another purpose. If it is true for one purpose, it is true for any purpose. And as the defendants have refused to commend the testimony of this witness to the court as true for a purpose to which it was relevant and material, we must reject it for the purpose for which it was offered, namely, to fix the date of the Dunkley constructed machine in 1903, instead of 1902. But, accepting Campbell's testimony as true in those particulars wherein he is corroborated by other witnesses, we find he worked for Dunkley on a machine of some kind in 1903; but this does not identify the machine as the one Dunkley claims to have invented in 1902, nor does it tend to prove the machine as Campbell's invention.

[2] The rule of law applicable to the evidence in this case was stated by the Supreme Court in Adamson v. Gilliland, 242 U. S. 350, 353, 37 Sup. Ct. 169, 170 (61 L. Ed. 356), where the court says:

"Considering that a patent has been granted to the plaintiff, the case is pre-eminently one for the application of the practical rule that, so far as the finding of the master or judge who saw the witnesses 'depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable.' Davis v. Schwartz, 155 U. S. 631, 636 [15 Sup. Ct. 237, 39 L. Ed. 289]. The reasons for requiring the defendant to prove his case beyond a reasonable doubt are stated in the case of The Barbed Wire Patent, 143 U. S. 275, 284 [12 Sup. Ct. 443, 450, 36 L. Ed. 154]."

The judgment of the lower court is affirmed.