### RICHMOND SCREW ANCHOR CO., Inc., v. BETHLEHEM STEEL BRIDGE CORPORATION.

(Circuit Court of Appeals, Third Circuit.   February 15, 1923.)

No. 2923.

1. Patents ⚸324(5)—Trial court's findings of fact only set aside for clear error.
    In a suit for infringement of a patent, the finding of the trial court that there was an express license should not be set aside, except for clear error.

2. Patents ⚸261—Patentee held estopped by designing structure to claim infringement.
    Where the owner of a patent for a cargo beam was an engineer engaged in designing municipal piers, and agreed that his invention might be used by the city on two piers constructed by defendant, and thereafter he designed other piers for the city, which also were constructed by defendant, and which included the patented beam, though he had no express instructions so to include it, he was thereby estopped from claiming infringement by the defendant's erection of the subsequent piers in accordance with his design.

3. Patents ⚸202(2)—Assignee cannot claim infringement patentee was estopped to claim.
    The assignee of a patent takes no higher rights under it than his assignor had at the time of assignment, and therefore cannot claim an infringement which the assignor was estopped to claim.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the Richmond Screw Anchor Company, Inc., against the Bethlehem Steel Bridge Corporation for infringement of a patent. From a decree dismissing the bill, plaintiff appeals. Affirmed.

See, also, 275 Fed. 585.

O. Ellery Edwards, of New York City, for appellant.

Fraley & Paul, of Philadelphia, Pa. (Henry N. Paul, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.   By the bill filed in the court below the plaintiff sought to enjoin defendant from violation of patent No. 1,228,120, granted May 29, 1917, to Melchior Lenke, for a cargo beam.   No issue of validity or infringement was raised, and the question of implied license on which the case turned was one of fact, de-

⚸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

termined by the acts and conduct of the parties. The question of expressed license is also one of fact, arising out of a writing construed in the light of acts and conduct of the parties. The court below found, as a fact, there was an expressed license and dismissed the bill. Whereupon the plaintiff took this appeal.

[1] Apart from the prima facies of the correctness of the court's findings of fact, which should not be set aside, save for clear error, we find ourselves, on an examination of the proofs, in entire accord with the court below. The patentee in this case, by profession a mechanical engineer, was, from 1904, employed by the city of New York, in the bureau of design of the department of docks. His work was the designing and drafting of sheds and docks along the city water front. In the summer of 1915, he was, in pursuance of his duty, preparing and drafting dock structures for the West Fifty-Fifth street and West Fifty-Seventh street piers. These plans contemplated the use of fixed cargo beams, and, while that planning and drafting work was going on, Lenke, one evening, while he was going home, conceived the idea of the use of swiveled cargo beams, and a year later, to wit, on August 25, 1916, he applied for a patent thereon, which was granted May 29, 1917. He at once made a sketch of his design, showed it the next morning to Mr. Keller, who was in charge of his room, who in turn showed it to Charles W. Staniford, the chief engineer of the department, who directed the design be put in the plans for the said piers. This was done by Lenke.

In pursuance of Lenke's plans, the city entered into a contract with the Bethlehem Steel Bridge Corporation, the defendant, for furnishing the steel work and erecting these piers, and between October 3, 1916, and May 11, 1917, the defendant completed the contract which specified swiveled beams of Lenke's design. During the work Lenke never raised any question or made any claim, either to the city of New York or to this defendant, for royalties or infringement of his patent, although his application for a patent was then pending; nor is any such claim now made for this pier work, and as to the work and course of conduct of the parties in relation thereto, Lenke testified:

"I was glad to have the city incorporate my invention in the design of these particular beams, because I felt this recognition of my invention would give it value."

While this work was under way, the city began preparing plans for another lot of municipal docks and pier sheds, which we refer to as the Staten Island piers, and Lenke, without any further instructions, incorporated, as he had done before, his swiveled cargo beams in the Staten Island pier plans. His account of this second use is as follows:

"Q. You have told me already, Mr. Lenke, that it was Mr. Keller, after consulting with Mr. Staniford, who told you to put this construction in the West Fifty-Seventh street shed; is that right? A. Yes.

"Q. And he told you, also, to put it in the West Fifty-Seventh street shed? A. Well, it was understood that, once they adopted it, it would be incorporated in the other shed, too.

"Q. The West Fifty-Fifth street shed, too? A. Yes.

"Q. And told you to put it in the first design for the Stapleton sheds? A.

The first time I was told to put it in the West Fifty-Seventh street shed, and after that I didn't have to be told; it was used right along.

"Q. You just put it in because it had been used before; you understood then it had become the standard construction? A. It means the scheme was adopted.

"Q. By whom; Mr. Staniford? A. Mr. Staniford agreed to the scheme, saving steel. The idea was saving steel, nothing else; economy was the main thing, and he accepted the design.

"Q. What I want to get at is this: He accepted the design on West Fifty-Seventh street. Did he also give you to understand that you were to continue that right along in similar dock construction? A. No; they don't do that. It is used right along without any question at all, when it is adopted; to go ahead.

"Q. So your use of this was because Mr. Staniford had originally adopted it back in 1915? A. Yes; he approved the design.

"Q. And you put it in? A. Yes.

"Q. And made the drawings for it? A. Yes; put it in since.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Q. The idea of your office was that, because Mr. Staniford and Mr. Keller had approved your original design back in 1915, thereafter that was to be used in all future cargo beam construction? A. That refers to any improvements at all.

"Q. And therefore you continued to put it in all these designs? A. Once it is approved, it is always used, until something else comes up which is better."

By contract dated March 20, 1920, the defendant agreed with the city to build these docks, and we find that, not only was no demand or claim made by Lenke of the defendant for royalty or infringement for his invention, but the contract the defendant signed and the designs specified therein, with the plans prepared by Lenke, were embodied therein. No mention was made in such contract that it embodied Lenke's patent, although the charter of the city provided:

"Except for repairs, no patented pavement shall be laid and no patented article shall be advertised for, contracted for or purchased, except under such conditions as there can be a fair and reasonable opportunity for competition, the conditions to secure which shall be prescribed by the board of estimate and apportionment."

And that this contract, for which Lenke provided the pier plans and designs, was drawn on the assumption that the obligations of no patents were involved, and that no claim or notice was given by Lenke of any purpose to claim royalty or charge infringement, and that such was Lenke's then purpose and course of conduct, and that he was making no departure from the course pursued by all parties when the defendant was taking the other contract, is evidenced by the fact that on June 20, 1917, while he was preparing those plans, Lenke, acting in his official position as an assistant engineer, and addressing the commissioner of docks, had delivered to the city a writing wherein he stipulated:

"764 Elmore Place, Brooklyn, N. Y., June 20, 1917.

"Mr. R. A. C. Smith, Commissioner of Docks, City of New York—Dear Sir: Referring to the matter of my patent No. 1,228,120, granted May 29, 1917, for cargo beams, I hereby offer to waive my royalties in behalf of the city of New York on all cargo beams embodying the invention covered by the aforesaid patent, which have been built or shall be built by the city of New York.

"Respectfully,          Melchior Lenke, Assistant Engineer."

[2, 3] Under such circumstances of silence, acquiescence, and written exposition of Lenke's reaffirmation of his position on the previous contract, Lenke, had he continued to own the patent, would have been in no position to come into a court of equity to enjoin the defendant from using the device in the piers, which he had specified in the plans and impliedly embodied in both contracts, and as an incident to such injunction to collect damages in royalty. When he assigned his patent to the present plaintiff, manifestly it took no higher rights under the patent than Lenke then had.

Clearly, therefore, the court below was right in refusing to enjoin and in dismissing the bill. While we base our decision on this view of the proofs, oral and written, as a whole and with particular relation to the Bethlehem Steel Bridge Corporation, the sole defendant, we deem it proper to add we are not to be understood as differing with the court below in its estimate of the effect of the paper Lenke gave to the city and the latter's rights thereunder. But as the city was not a party to this suit, and as the court's action was fully justified on the ground of Lenke's estoppel by his acts, taken as a whole, we refrain from now adjudging the city's rights under the paper on file with it.

The judgment below is affirmed.