**DOVAN CHEMICAL CORPORATION v. NATIONAL ANILINE & CHEMICAL CO., Inc.***

(Circuit Court of Appeals, Second Circuit. July 19, 1923.)

No. 282.

Patents ⊜⟹328—1,411,231, for vulcanization accelerator, held invalid.

The Weiss patent, No. 1,411,231, for a vulcanization accelerator, which covers the process and product of vulcanization by the use of diphenylguanidine (called D. P. G.) as an accelerator, in the same manner as other guanidines had previously been used, *held* invalid on the ground that the discovery of the superiority of D. P. G. as an accelerator, which is all that is claimed by the patentee, was not made by him, but by others before him.

Mayer, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Dovan Chemical Corporation against the National Aniline & Chemical Company, Inc. Decree for complainant, and defendant appeals. Reversed.

Suit is on all the 12 claims of patent No. 1,411,231, granted March 28, 1922, to plaintiff, as assignee, on the application of Weiss filed November 12, 1921. On July 2, 1921, Weiss filed an earlier application, for a "process of making diphenylguanidine"—a chemical around which this litigation revolves,

---
⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 134, 68 L. Ed. —.

and which is called in the record D. P. G., an abbreviation that will be used in this opinion. This application also ripened into a patent, No. 1,422,506, on July 11, 1922, but the present suit is not brought thereupon. Its existence and nature, however, have an important bearing on the case at bar. This earlier application was also assigned to plaintiff before issue.

D. P. G. is a substance long known to chemists, but produced, before Weiss invented his above referred to process, only with difficulty and expense. It was a laboratory and not a commercial product. This is the assertion of the application of July, 1921, and may be assumed as true for purposes of discussion. Thus by the date just given, at the latest, Weiss conceived that he knew how to produce D. P. G. in quantity and under commercial conditions.

The application for the patent in suit is labeled as one for a "vulcanization accelerator," and its asserted object is "to improve rubber compounds" in two particulars: (1) By imparting to "the finished product, . * * * superior quality"; and (2) by reducing "the time required for vulcanization." The first asserted excellence, need not be discussed; for present purposes it is unimportant, if not immaterial. The second is admitted, in a certain sense, viz. that D. P. G. is an "accelerator" of merit, its acceleration is more active than that of most, if not of all, the substances previously used, its adoption is very recent, and no commercial or manufacturing use is known for it, except in vulcanization.

An "accelerator" is any substance organic or inorganic which, when mixed in due proportion with the mass prepared for vulcanization, hastens that process by a chemical action generally described as "catalytic." D. P. G. is but one member of what the testifying chemists call the guanidine group, which includes T. (tri) P. G. and M. (mono) P. G., and T. P. G. was a known and commonly used accelerator for some years before Weiss. In this state of affairs, Weiss said in his application for the patent in suit: "I am aware that T. P. G. has been suggested, and probably used to some extent, as an accelerator in the vulcanization of rubber, but the use of D. P. G. for that purpose appears to have been unknown prior to my researches on this substance." He then proceeds further to assert that he had discovered "di-substituted guanidines," though "particularly D. P. G.," to be effective accelerators; but the disclosure does not reveal any reason for this summary extension of efficiency and invention to a class of which D. P. G. is but a member. Finally the specification defines D. P. G. by formula, and gives the ingredient proportions of the mass for vulcanization; but neither particular is new.

The foregoing is the sum of disclosure, and on it Weiss founded claims (allowed as propounded) for both process and product, so drawn as to cover, not only the use of D. P. G., but of any di-substituted guanidine. This scheme of invention definition is illustrated by claims 1 and 12, which are as follows: (1) The process of treating rubber or similar materials, which comprises combining with the rubber compound a di-substituted guanidine. (2) A vulcanized compound of rubber or similar material combined with a vulcanizing agent and D. P. G.

Plaintiff as assignee was thus armed with one patent for a special method of producing D. P. G., and another which in effect covered the use, in rubber vulcanization—of a family or group of guanidines, including D. P. G., however produced. Defendant has made D. P. G., and sold it to persons who in all probability would use all or most of it in vulcanizing rubber, and especially in preparing tires for motorcars; this being the commercial demand of the day stimulative of inventions such as the one at bar. But, so far as this record shows, defendant's D. P. G. does not infringe Weiss' process for making that chemical; therefore defendant is sued herein as a contributory infringer of No. 1,411,231, which is described in the bill as covering an "improvement in vulcanization accelerators and in the process of treating rubber, and in the vulcanized rubber compound in which said accelerator is used."

Plaintiff prevailed below, and defendant was by decree declared to have "contributed to the infringement (of the patent in suit) by manufacturing, selling and causing to be used D. P. G. as an accelerator in the vulcanization of articles made of rubber." Decree awarded to plaintiff "the profits, gains

and advantages" derived from such infringement, with the usual injunction. Whereupon defendant appealed. Further references to the evidence will be made in our opinion.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds and Frank E. Barrows, both of New York City, of counsel), for appellant.

Sheffield & Betts, of New York City (Drury W. Cooper, James R. Sheffield, and Edward W. Vaill, all of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). There are several matters, raised by the pleadings and treated in argument, that we shall lay aside at once, as not necessary for decision, however interesting in themselves or important in other cases. Thus we express no opinion as to whether, considering the long-existing knowledge of D. P. G., and the pre-existing actual commercial use of T. P. G. for acceleration, it constituted patentable invention in Weiss to muster in the former chemical as an accelerator.

For the same reason we shall not consider the argument that such of the claims in suit as seek to monopolize all di-substituted guanidines (Nos. 1, 5, and 9) cannot be valid if taken literally. Nor is it necessary to decide whether there was error in awarding against a contributory infringer, under the circumstances shown, recovery of profits, as distinct from damages.

What must be decided are certain questions of fact, and the answers we shall give will dispose of the whole litigation. These questions may be thus framed: (1) What did Weiss invent, according to his own statements, and that word includes, not only what he swore to in his specification, but what he similarly affirmed in affidavits and on the witness stand? (2) When did he make the invention in question? On the answers to these queries, will depend our finding as to the duly pleaded defense that "prior to the alleged invention (by Weiss) the same and every material part thereof were (if there be any patentable invention therein) invented by" other persons named, or one or some of them.

What Weiss invented, he tells in his specification thus, "I have found that D. P. G. is much more powerful and efficacious as an accelerator in vulcanization than T. P. G.;" and nothing in plaintiff's evidence enlarges, improves, or contradicts this simple statement. The claims, too, when the increment of using the phrase "di-substituted guanidines," instead of D. P. G., is disregarded, mean substantially just what Weiss swore to, and the whole application might be condensed into one sentence:

"I claim the use of D. P. G. as an accelerator, because I was the first person who observed its efficacy for that purpose."

We are assuming that what might be called a "patent of observation" is good in law, and good when wholly disassociated from any method of producing that of which the beneficial use is observed. And

this leads us to point out here how Weiss' earlier application for "a process of making D. P. G." clouds the present issue.

The claims in suit would be just as good, or bad, as they are now, if D. P. G. were worth as much as radium, and if neither Weiss nor any one else were able to furnish the chemical, except in laboratory quantities and by laboratory methods. Of course, in such case, this litigation would never have arisen, and the patent at bar would probably never have been sought, because in a practical sense it is but a pendent or "clincher" to the process patent; yet in legal theory the patentable invention here displayed would be just as good or bad as it would be if it had no more relation to the commercial or practical arts than had the "Edison effect," when it was granted patent protection more than a generation ago.

In making the foregoing summary of invention, we agree with the patent examiner, who remarked that Weiss' application was—

"no more than a broad disclosure of the use of [D. P. G.] without disclosing any details other than those usually employed with accelerators of this class."

Assuming, now invention in this "broad disclosure," and proceeding to the query as to when Weiss invented, the date September 2–6, 1919, is important. On those days the American Chemical Society met in Philadelphia; the meeting was largely attended by chemists. Weiss did not go, but his superior officer (practically his employer) did. At that meeting Dr. Kratz read an essay prepared by himself and his assistants on "the action of certain organic accelerators in the vulcanization of rubber." We hold that essay to be a complete disclosure of everything in the application for the patent in suit, and of a great deal more useful and accurately stated information.

The Kratz essay was subsequently published, but only within less than two years of Weiss' filing date. Appellee seems to complain that defendant treats this spoken essay as a publication under R. S. § 4886. We perceive no such contention. It would, of course, be untenable; but the assertion is made, and we agree with it, that Dr. Kratz invented whatever Weiss did, before the latter had any concept of invention. Therefore Weiss was not the "first sole, true, and original inventor," as the bill asserts.

The quotation above made from the file wrapper contents is part of what the Examiner said, when he confronted Weiss' solicitors with the publication of Kratz's essay. Their reply was, not to call attention to the date of publication and rely on R. S. § 4886; there was obvious recognition of the truth of the Examiner's criticism, and Weiss fell to affidavit making (under office rule 75), and carrying back his date of invention, so as to antedate Kratz's reading of his essay. The reason, and the only reason, for this is that Kratz by that essay proclaimed himself and his associates as having observed that D. P. G. was a better accelerator than T. P. G., inter alia, and this, as we have pointed out, and as the Examiner in substance said, was and is the sum total of this invention.

Dr. Kratz was naturally not heard from in the Patent Office, and the patent was carried through by these affidavits. The same method was used at trial, but Dr. Kratz and his associates and records were

there. We have carefully studied that evidence and Weiss' testimony, which is not wholly reconcilable with some of the affidavits used in the office.

It is proven by plaintiff's witnesses that Weiss' superior came back from Philadelphia and listening to Kratz's essay, and told Weiss and others that he was convinced that "D. P. G. had a good deal on T. P. G.," and gave orders to Weiss to experiment with the now preferred chemical. There is no doubt that the patentee was thus spurred on by Kratz. But, for purposes of decision, we accept all his evidence of prior efforts, experiments, or reductions to practice, and will assume that as early as the autumn of 1918 he had not only experimented with D. P. G. as an accelerator, but produced vulcanized rubber with its use. This is a larger assumption than plaintiff can demand on the evidence; yet it cannot avail.

We do not believe that any one regarded D. P. G. as a seriously preferable accelerator until after the Kratz paper, because that chemist was plainly on this record the first to give comparative figures demonstrating the great saving of time following the use of D. P. G. He gave definite and persuasive reasons for the preference. We therefore incline to regard all the pre-Kratz work as merely experimental, and guided by no principle. Kratz gave the crucial information as to time saving.

But, if we are wrong about this, and if making small experimental slabs of rubber or shoddy with D. P. G. as the accelerator constituted embodiments of Weiss' disclosure, then we find, on what we regard as the clearest evidence, that Dr. Kratz did the same thing in 1916. Further, when we perceive how closely his acts in 1916 correspond with his essay of 1919, we believe his evidence, though uncorroborated, that in 1917 he made rubber tires and sold them, using D. P. G. as the accelerator; and this is more than Weiss even claims to have done before application filed.

It follows that, taking this patent at the patentee's own value, and accepting, for purposes of decision only, his view of what he invented and how he embodied that invention, Dr. Kratz and associates were ahead of him in every step. Therefore, on this record, they were the inventors (if any patentable invention exists), and not Weiss.

Decree reversed, with costs, and cause remanded, with directions to dismiss the bill, with costs.

MAYER, Circuit Judge, dissents.