## UIHLEIN et al. v. GENERAL ELECTRIC CO. et al.
### No. 4391.

Circuit Court of Appeals, Seventh Circuit.
Jan. 24, 1931.

On Rehearing, April 8, 1931.

998

James M. Sheean, of Chicago, Ill., Arthur J. Hudson, of Cleveland, Ohio, and Louis Quarles, of Milwaukee, Wis., for appellants.

Frank Parker Davis, of Chicago, Ill., Alex D. Salinger, of Boston, Mass., Frank J. Seabolt, of Schenectady, N. Y., and Ernest F. Mechlin, of Washington, D. C., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal involves a contest between inventors, who dispute as to which is the first discoverer of certain "improvements in electrical furnaces." The suit, authorized by section 4915, Rev. St. (35 USCA § 63), was to secure the issuance of letters patent to Messrs. G. and B., joint inventors, whose application for letters patent was denied by the Commissioner of Patents. Appellants, who were defendants in the District Court, are all interested in patent No. 1,490,732 issued to one Callaghan, which covers the same combination for which G. and B. made application for a patent. The two applications were copending, and an interference was declared. The issue—who was the first discoverer—was tried and decided in favor of C. to whom the above-numbered patent was issued.

Appellants contested appellees' suit, and by counterclaim sought to enforce the C. patent and obtain the usual decree for an injunction and an accounting due to infringements thereof. Upon the trial of the issues presented by these pleadings, the District Court found for appellees and entered a decree directing the Commissioner of Patents to issue a patent to appellees and dismissed appellants' counterclaim. This appeal followed.

Disposition of this appeal turns on the answer to the question, Who was entitled to a patent on the combination described in the two copending applications in the Patent Office? To settle this question two issues of fact necessitate an answer: (a) Who first discovered the new combination for which C. obtained the patent; and (b) if C. was the first discoverer, did he abandon his discovery before the patent to him was issued?

As the District Judge found for appellees, it is necessary, for appellants to prevail, that they satisfy us that C. was entitled to a favorable answer to both questions.

The history of the contest in the Patent Office is important. B. and G. filed their application first, to wit, June 5, 1918. C. filed his application October 23, 1918. C. fixed the date of his discovery as about September 15, 1917. G. and B. asserted the date of their invention was March 14, 1918, and actual reduction to practice, July 10, 1918. The dates submitted by G. and B. are not disputed. Controversy exists over the date of C.'s discovery.

The Examiner of Interferences in the Patent Office found C.'s date of discovery to

be September 15, 1917. On three successive appeals the same issue was decided by the Board of Examiners in Chief, the Commissioner of Patents, and the Court of Appeals of the District of Columbia in the same way.

The question of abandonment, i. e., the issue of diligence, was found in favor of C. by the Examiner in the Patent Office and by the Court of Appeals of the District of Columbia. The Commissioner and also the Board of Examiners in Chief in the Patent Office found C. had not been diligent.

The District Judge in this suit found against C. on both issues.

There was small difference in the testimony presented at the five trials. While counsel for appellants asserted that additional evidence was presented to the District Court, we cannot believe it accounted for the difference in the findings.

The quantum of proof required to justify the court in setting aside the patent is stated in Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 773, 38 L. Ed. 657, as follows:

"Upon principle and authority, therefore, it must be laid down as a rule that where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction. Tested by that rule the solution of this controversy is not difficult. Indeed, the variety of opinion expressed by the different officers who have examined this testimony is persuasive that the question of priority is doubtful, and if doubtful the decision of the Patent Office must control."

█ The real test is laid down in the first sentence of the quotation. The last sentence is an unfortunate expression. It has been construed by counsel as stating a self-applicable test for courts. We cannot believe the court meant to say that a difference of opinion in the Patent Office conclusively negatived complainant's allegation that he was the first inventor in a suit authorized by this section of the statute. 35 USCA § 63.

In short, we are of the opinion that the District Court was right in its assumption that it was not bound by the departmental decisions, even though the testimony before those tribunals was similar to that presented in the District Court. The statute, which gave to the litigants the right to present the case anew to the District Court after it was finally closed in the Patent Office, imposed upon the District Judge the obligation of hearing the evidence and determining the issues in the light of the rule laid down by the Supreme Court, but not controlled by the decisions of the Patent Office tribunals.

It would serve no useful purpose to narrate all of the evidence bearing on this issue or discuss all phases of it. There were several witnesses who testified, and who were examined and cross-examined. There was little serious conflict in their testimony. Appellants' contentions were, in the main, well supported by their witnesses. Two, Callaghan and Uihlein, were interested in the outcome. The others were disinterested and apparently men of character and standing.

There was nothing inherently improbable about the testimony of Callaghan. Nevertheless, if his testimony alone made out appellants' case, we would hardly be justified, in view of his interest, in refusing to accept the finding of the District Court. But the testimony of his corroborating witnesses is strongly persuasive of the facts as asserted by C. In short, we can hardly find C. to be a willful falsifier without branding the other witnesses similarly. These other witnesses were all credible witnesses—responsible parties. They were not interested in the outcome of the litigation. They were not disputed by other witnesses, and their story, far from being incredible, appears entirely reasonable.

Our conclusion is that the evidence was not sufficient, under the rule announced in Morgan v. Daniels, supra, to overcome the force of the finding of the Court of Appeals of the District of Columbia on this issue, supported as it is by the conclusion of three other fact finding tribunals.

*Diligence.* Was C. diligent in securing a patent for his invention?

█ Diligence ordinarily involves a mixed question of fact and law. Perhaps, it would be more accurate to say it is a question of fact, the determination of which often necessitates the application of a principle of law. The mental process by which diligence is determined necessitates a disposition of the fact controversy, if any. After the fact has been found, it must be tested by a standard of care fixed by law or created by the court in accordance with certain rules of law. And the result of this test determines the absence or existence of diligence.

Examining the statute (35 USCA § 31), we find some light on what constitutes diligence on the part of an inventor. The conditions upon which a patent may be obtained are there stated. The inventor is entitled to a patent, other named conditions appearing, "unless the same is proved to be abandoned."

■ Abandonment may be established in two ways. One is by the express declaration of the inventor to the effect that no monopoly is sought or desired. The other way is to introduce evidence from which the court may find that abandonment is implied. In other words, there may be an express abandonment or an implied or constructive abandonment. Controversy arises most frequently out of an infringer's effort to establish an abandonment by showing the inventor has been guilty of laches. It is in reference to this phase of implied abandonment that courts use the word "diligence." If the inventor has failed to diligently proceed with the reduction of his idea to practice or to diligently prosecute his application for a patent, courts have found therein the basis of an implied abandonment.

■ We find the facts regarding this issue, like the other issue, hardly in dispute. C.'s discovery was made about September 15, 1917. He did not apply for a patent until October 23, 1918. He first made drawings in August, 1918. Our inquiry, therefore, must be directed to ascertaining whether his failure to apply for a patent for thirteen months after discovery, or the failure to make drawings for eleven months, was satisfactorily explained.

C. was a mechanic, married and supporting a wife and seven children. He had no independent means and earned $4.48 a day, part of the time, and $6.40 a day during the latter part of this period. To make application for a patent, he borrowed the necessary money of Uihlein, his superior officer.

The cost of building a furnace of the character here under consideration was such as to preclude the possibility of C.'s constructing one. His invention, moreover, was only an improvement in furnaces and could be readily understood without building an entire furnace.

But it is argued that he could have made sketches, drawings and written descriptions. Had he done so, proof of the first issue, the date of his discovery, would have been strengthened, no doubt. But our query now is directed to his diligence "in carrying forward his idea," not to his obtaining evidence to more conclusively establish the date of his discovery.

Doubtless there are many instances (perhaps in most cases) where the first step in the inventor's reduction to practice would be the preparation of drawings. But drawings would not be required in all cases, for reasons too numerous to mention. They were not necessary in the instant case because of the nature and character of C.'s employment and because his improvement could be satisfactorily explained and understood without drawings.

But lack of means was not the only difficulty which confronted C. The United States was at war. C. was employed by his government as an inspector of ordnance at the Inland Ordnance Company. This company was under contract with the government to manufacture five million pounds of gun forgings for 3" and 4" guns. About three hundred thousand pounds were to be furnished to the Navy Department each week. The government supplied the furnaces, which were furnished by the General Electric Company. C.'s immediate superiors at various times were Johnson, Holden, Reed, and Uihlein, and above them was Pickering.

It was the work of these government representatives to inspect and pass on materials and to facilitate production. The common work of all was the production of war material. To speed up production was the goal of the government and the manufacturer.

C., who had worked as a machinist and who had had experience in building and repairing heat treating furnaces, naturally had his attention promptly directed to the electrical heat treating furnaces. They were somewhat of an experiment, being almost new in this field at this time. Their success was most important because a breakdown cut production. The possibility of such interruption was the ever present subject of conversation and report. As interrupted production followed furnace trouble, attention was directed to the construction and successful operation of electrical heat treating furnaces. Concerning the asserted advantages of the electrical over the gas heat treating furnaces, there was sharp controversy among the superior officers.

C.'s first duty was, therefore, rather clear, we think. He could hardly carry his criticism of the furnaces installed, to the public. The war activities of the government, particularly the manufacture of guns or arms and munitions, were hardly matters of appropri-

ate public discussion. C.'s duty, therefore, was to report to his superiors. He called their attention to certain weaknesses and told them of his proposed changes in the structure. His superiors corroborated him in this story. For several months thereafter, the furnaces installed were closely watched, the merits of electrical versus gas heat treating furnaces were debated. The government decided to stand back of the furnaces in use and rely upon the reputation and guaranty of the manufacturer. In the meantime the furnaces continued to function and turn out tons of forgings. Interruptions occurred and when necessary, the furnaces were repaired as promptly and diligently as possible. But the inherent weakness, which C. claimed he pointed out in September, 1917, became more and more apparent. In the spring of 1918, B. and G. designed improvements, and an application for a patent thereon was immediately filed. When this fact was made known, C.'s immediate superior informed him that he could apply for a patent.

There seems to have been some dispute among the officers respecting the propriety of a government employee's applying for a patent without first obtaining the consent of his superiors. Back of this position was the fact that the country was at war and the invention related to machinery used in producing war material. While we do not accept the view that C. was barred because of his position from making an application for a patent, it was clearly contrary to the spirit of his employment to give publicity to the failure of the furnaces to turn out the desired quantities of gun forgings.

Considering all of the circumstances, we are unable to say that C.'s conduct was such as to indicate an abandonment of his invention or that he was so lacking in diligence as to bar his right to successfully prosecute his application for a patent.

In reaching this conclusion we have assumed that the rule announced in Morgan v. Daniels, above quoted, respecting the quantum of proof necessary to justify the disregard of a decree of the Circuit Court of Appeals of the District of Columbia, applies to this issue as well as to the issue of priority of invention. We have likewise been mindful of the weight which we should give to the findings of the District Court. With his customary clarity, the District Judge has given his reasons for his findings. It must be said on the other side, however, that much of the testimony was in the nature of depositions. Moreover, the probative value of the court's findings is weakened by the fact that, as to one issue, four tribunals, experienced in passing on such questions, reached a conclusion contrary to that found by the District Judge. As to the other issue, a mixed one of fact and law, the finding of the Circuit Court of Appeals of the District of Columbia is at variance with the finding of the District Judge.

We have intentionally refrained from passing on the validity or infringement of the patent issued to Callaghan, which issues were presented by appellants' counterclaim in the District Court, but which were not considered by the District Court in view of its disposition of the suit on other grounds.

The decree is reversed, with directions to proceed in accordance with the views expressed in this opinion.

## On Rehearing.

Both parties have petitioned for a rehearing. Appellants seek a modification of that part of our opinion which directs a further hearing in the District Court. Appellees argue anew both questions decided against them.

An earnest desire to fairly meet counsel's argument, supplemented by an anxiety to avoid an erroneous conclusion, has caused us to again study the record, the opinion of the District Court, and the briefs of the opposing counsel. Appellees have favored us on this rehearing with two additional briefs, both longer than the original brief filed by them. They insist "that this court appears to stand alone in its refusal to follow the rule" supported by the unanimous decisions of the federal courts to the effect that a trial court's fact findings are unassailable where the evidence upon which they are based is conflicting.

If it be true, as asserted, that this court is out of harmony with all the other federal courts, we should readily correct our position. For it is not only our desire to follow the rule of the Supreme Court, but such a rule as appellees contend for, if it exists, will greatly lessen the work of this court, especially in patent litigation. The study of a record in a patent suit is a laborious task, and if the appellate court is bound by the District Court's finding on an issue of fact, be it on infringement, validity, the inventor's diligence, or the priority of the invention, a burdensome load will be lifted from our shoulders. We have assumed that not only this court, but all courts of appeal, have a duty to perform when an assignment of error rais-

es the question of the sufficiency of the evidence to support the trial court's findings, which cannot be evaded or avoided by shielding ourselves behind the District Court's findings.

In considering such an assignment of error, we have assumed and uniformly held that the finding is presumably correct, but that it may be successfully assailed (a) if the physical facts demonstrate its unsoundness, (b) if the court clearly misapprehended the evidence or went against the clear weight of such evidence, (c) if the court applied an erroneous rule of law, which was necessary to the making of such finding, (d) if two fact-finding tribunals, on substantially the same evidence, reached different conclusions. In the latter case, this court will not give the same weight to the District Court's finding that it would give if such finding were not challenged by a contrary finding of another fact-finding tribunal.

In American Central Insurance Co. v. Harmon Knitting Mills, 39 F.(2d) 21, 24, we said: "True, this court must give and does readily give much weight to the District Court's finding upon this disputed issue. However we are not required to accept it in the same sense that we accept the verdict of a jury in an action of law respecting an issue over which there is a dispute."

There seems to be more reason for accepting without question the verdict of a jury in an action at law or in a criminal case than the finding of a court in an equity suit. Constitutional Amendment 7 provides "that no fact tried by a jury shall be otherwise reexamined, in any court of the United States, than according to the rules of the common law." No such constitutional or statutory pronouncement of the effect of a finding of a court in an equity suit exists.

Even in civil actions at law, however, the verdict of a jury is not conclusive, though there be some conflict in the evidence. In the recent case of Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 233, 74 L. Ed. 720, the court had occasion to announce the rule in this language: "A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' "

The rule governing the rejection of a finding of fact is not much different. It was stated in American Rotary Valve Co. v. Moorehead (C. C. A.) 226 F. 202, 203:

"There would be no occasion for a written opinion on denying a rehearing, except for the fact that counsel for appellant claim that we expressly or impliedly held, in so disposing of the case, 'that under the new equity rules the decision of the trial court upon a disputed question of fact is binding upon the review court.'

"We had no intention of being so understood. Under the new equity rules, as well as under the old ones, the reviewing court has the right, and owes to itself and to the parties the duty, of trying the questions of fact de novo. Under the old rules, the findings of the trial court were entitled to be treated as very persuasive, and such findings were not to be disturbed, unless it appeared quite clearly that the trial court had either misapprehended the evidence or had gone against the clear weight thereof. We conceive that the new rules have made no change in those respects."

Such differences of opinion as exist are usually traceable to the meaning of the language in (b), above, "if the court clearly misapprehended the evidence or went against the clear weight of such evidence." There might be differences of opinion as to when a finding is clearly contrary to the evidence, but there should be no difference as to the rule itself.

The case of Corona Cord Tire Co. v. Dovan Corp., 276 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610, is worthy of special attention. There the court said, page 375 of 276 U. S., 48 S. Ct. 380, 385: "It is also claimed that because the trial court in this cause found, after hearing the witnesses, the weight to be with the petitioner and against Weiss, assignor of respondent, its conclusions of fact, except for manifest error, are to be treated as unassailable. Adamson v. Gilliland, 242 U. S. 350, 353, 37 S. Ct. 169, 61 L. Ed. 356; Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289; Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764; Tilghman v. Proctor, 125 U. S. 136, 149, 8 S. Ct. 894, 31 L. Ed. 664; and Mason v. United States, 260 U. S. 545, 556, 43 S. Ct. 200, 67 L. Ed. 396. We do not think that this rule applies in the case before us, at least to its full extent, first, for the reason that the Circuit Court of Appeals, having considered all the evidence upon which the trial judge reached his conclusion, declined to approve of his

findings, and, second, because in the National Aniline & Chemical Co. Case [(C. C. A.) 292 F. 555], which is in conflict with the case here, the trial judge reached a different conclusion on the same issue and the same evidence which we have here."

The Ninth Circuit Court of Appeals has had occasion to discuss this question in Carson Inv. Co. v. Anaconda Copper Mining Co., 26 F.(2d) 651, 661. The court said: "We are mindful that the evidence as to prior use is conflicting, and that there is testimony that there was a practice of sidecharging in the smelters at Dollar Bay. But in patent litigation the mere fact that there is a serious conflict in the evidence as to prior public use, and that the District Court has made its findings in favor of defendants in conformity to evidence on that issue, does not present an instance where the appellate court must adopt the findings of the trial judge."

The Sixth Circuit Court of Appeals likewise spoke upon the question in Vandenburgh v. Truscon Steel Co., 277 F. 345, as follows: "The burden rests on a complainant to establish an asserted earlier date of invention to the satisfaction of the court, and the conclusion of the trial court on such question of fact must be accepted by the appellate court, *unless the evidence decidedly preponderates against it.*"

In Thomson, etc., Co. v. Ford Motor Co., 265 U. S. 445, 447, 44 S. Ct. 533, 534, 68 L. Ed. 1098, the court said: "Ordinarily, therefore, the case would call for the application of the well-settled rule that the concurrent findings of the lower courts on questions of fact will be accepted by this court unless clear error is shown. Wright-Blodgett Co. v. United States, 236 U. S. 397, 402, 35 S. Ct. 339, 59 L. Ed. 637; United States v. State Investment Co., 264 U. S. 206, 44 S. Ct. 289, 68 L. Ed. 639, and cases there cited. We think, however, that this rule should not be strictly applied in cases brought here because of a conflict of decision in the different circuit courts of appeal."

In Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 36, 50 S. Ct. 9, 10, 74 L. Ed. 147, the court said: "And the cases have been brought here because of the conflict of decision in the two Circuit Courts of Appeals, it is clear that under these circumstances, neither properly calls for the strict application of the general rule as to the acceptance by this Court of the concurrent findings of the lower courts on questions of fact, and we consider independently the question as to which of the decisions on this question is based upon the sounder reasoning and is correct."

In Diamond Patent Co. v. Webster Bros. (C. C. A.) 249 F. 155, 158, the court said: "The trial court having the advantage of seeing and especially examining the material which it is claimed infringes, an appellate court, without such advantage, will not disturb the conclusion reached, *unless it appears clearly that the finding is against the obvious weight of the testimony.*"

Other cases holding that findings may be rejected when they are *clearly contrary to the evidence* are Collins v. Hupp Motor Car Corp. (C. C. A.) 22 F.(2d) 27; Trane Co. v. Nash Engineering Co. (C. C. A.) 25 F. (2d) 267; Gibson v. American Graphophone Co. (C. C. A.) 234 F. 633; Central Cal. Canneries Co. v. Dunkley Co. (C. C. A.) 247 F. 790; Richmond Screw Anchor Co. v. Bethlehem Steel Corp. (C. C. A.) 287 F. 94; Rainbow Light v. Claude Neon Lights (C. C. A.) 40 F.(2d) 222; Waterloo Register Co. v. Atherton (C. C. A.) 38 F.(2d) 75; Union Trust Co. v. White Motor Co. (C. C. A.) 22 F.(2d) 821.

Respecting the duty of the Appellate Court to examine and weigh the evidence when there is a conflict in the findings of different fact-finding tribunals, see, also, Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222.

It should not be understood from these observations that we are departing from the well-recognized rule which has been applied in innumerable cases in this and in other courts and is well supported in reason. This rule necessitates our acceptance of a finding by the trial court based upon conflicting evidence coming from witnesses testifying in open court, where credibility is largely determined by the personal observation of the trial judge. But where the compelling force of the story of the witnesses and the corroboration or refutation of uncontradicted evidence is determinative of the fact, rather than the credibility of witnesses, or where the testimony is taken by deposition (here a large part was taken by deposition), findings of a trial court, while worthy of respect, are not conclusive, in the Appellate Court.

In short, this rule is no stronger than the reasons which support it.

In the instant case, two unusual facts combined to justify a departure from it: (1) The fact that four fact-finding tribunals reached different conclusions from those

found by the District Court; and (2) the statute, section 63, title 35, USCA, and the decisions thereunder, placed upon appellees a heavy burden, which could only be overcome "by testimony which in character and amount carried thorough conviction" and which left the court free from reasonable doubt.

It is unnecessary to further discuss the effect of the findings of the four tribunals which passed upon this issue prior to the District Court.

Respecting the second ground for distinguishing this case from the usual run of cases, we cite in addition to Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, discussed in the original opinion, the case of Gold v. Gold, 237 F. 84, 86, a case decided by this court.

Referring to the quantum of proof necessary to justify a setting aside of the decision of the Court of Appeals of the District of Columbia, the court said: "The District Court, in this statutory proceeding to review the decree rendered in a contested case by a court acting as the final expert administrative governmental department, exercises a jurisdiction somewhat analogous to, though broader than, that exercised by a court of equity on a bill to set aside a judgment at law—broader, in that the evidence may go to the merits of the original controversy; but, though a re-examination of the evidence is not precluded, the court must be thoroughly convinced that it furnishes no substantial support whatever for the decree before the conclusions reached by the Court of Appeals of the District of Columbia will be overturned."

A further study of the cases convinces us that instead of being out of harmony with other federal courts, the decision of this court in the above-entitled action has been cited with approval in most of the circuits. Loughran v. Quaker City Co., 296 F. 822 (3rd Cir.); Earles v. A. W. Drake Mfg. Co., 300 F. 265 (3rd Cir.); Greenwood v. Dover, 194 F. 91 (1st Cir.); Texas Co. v. McAfee, 299 F. 718 (5th Cir.); Hernandez v. Prizma, Inc., 39 F.(2d) 196 (Me. D. C.); Prescott v. Swain, 39 F.(2d) 241 (Ohio D. C.); Gold v. Newton, 254 F. 824, 827 (2nd Cir.).

In Gold v. Newton (C. C. A.) 254 F. 824, 827, we have an opinion which goes much further than it is necessary for us to go in the instant case. And we do not go so far as the holding of this case. There, two of the three judges of the Circuit Court of Appeals were in favor of the plaintiff in his suit brought under 35 USCA § 63. Notwithstanding the fact that the majority of the judges of the Appellate Court favored the plaintiff, the court held for the defendant, saying:

"* * * We are all of opinion that the fact of difference among ourselves is reason the more for adhering to the rule of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, * * * and especially so in a case where we have no testimony materially changing the record that was before (and indeed repeatedly before) the court authorized equally with ourselves (though in a somewhat different manner) to deal with questions of this kind, viz. the Court of Appeals of the District of Columbia.

"In respect of actions like this, solely against the Commissioner, the jurisdiction still existing under R. S. § 4915 * * * is, to say the least, a singularity in law making. While the statute exists, jurisdiction must be exercised; but we entirely concur with the court below that, in order to advise or direct the Commissioner to issue a patent which he has refused and had his refusal approved by the District Court of Appeals, there must be introduced substantially new and persuasive testimony, not adduced before the tribunals with which we are invited to differ. Here we have nothing but an argument, persuasive to a majority only of this court, and even that argument seems to have been the same throughout this long and tangled litigation."

A further discussion, and a more elaborate statement of the evidence, which has raised not only a doubt in our mind but has convinced us of the fact that Callaghan was the first inventor of the electric furnace, will not be attempted. It is, we think, sufficient to say that the conclusion, which we expressed in the first opinion, has not been changed by a further study of the evidence on this petition for rehearing. The fact that Callaghan and his supporting witnesses did not fully agree in all respects should not necessarily detract from the persuasiveness of their story. They agreed upon the essential matters. Had the witnesses been in perfect accord in the exact phraseology of the various conversations, it might have suggested a "practice in concert" on their part, a "horse shedding" of the witnesses, which would have weakened rather than strengthened their testimony.

*Diligence.* No further discussion of this phase of the case would be undertaken but for appellants' insistence that the evidence

was not properly weighed because of our adoption of an erroneous standard of diligence. It is argued that the statutory basis for the diligence requirement is to be found in 35 USCA § 69. In examining the facts and reaching a conclusion upon this issue, it is probably of little importance whether statutory authority for its requirement be traceable to one section of the statute or another. Our study of the cases, however, has convinced us that the diligence required of an inventor, who does not make application for a patent covering his discovery until after another has applied for such statutory monopoly, is not to be found in either 35 USCA § 31 or 35 USCA § 69. Harper v. Zimmerman (D. C.) 41 F.(2d) 261; Martin v. Curtiss Aeroplane & Motor Co. (D. C.) 26 F.(2d) 701; Chubb v. Short, 58 App. D. C. 27, 24 F.(2d) 469; Crabbs v. Wardell, 57 App. D. C. 241, 19 F.(2d) 715; Ross v. Burke, 57 App. D. C. 243, 19 F.(2d) 717; Vanore v. Improta, 58 App. D. C. 130, 25 F.(2d) 918; Petersen v. Thomas, 56 App. D. C. 113, 10 F.(2d) 908; Beidler v. Caps (Cust. & Pat. App.) 36 F.(2d) 122; Automatic Weighing Machine Co. v. Pneumatic Scale Corp. (C. C. A.) 166 F. 288; Kendall v. Winsor, 62 U. S. (21 How.) 322, 16 L. Ed. 165.

Under these decisions and the various sections of the statute governing the allowance of patents, including 35 USCA § 63, it would seem improper to measure Callaghan's conduct by the standard established in the doctrine of implied abandonment. Because of the benefits to the public which attend patentable discoveries, courts have laid down the rule that reward will be given only to the first inventor, who, after making his discovery, proceeds diligently to reduce it to practice or apply for a patent. Should one making the discovery fail in diligence in reducing it to practice or applying for a patent and another later makes the same discovery, but at an earlier date proceeds to reduce it to practice or apply for a patent, the latter will be rewarded because he made it possible for the public to earlier enjoy the invention.

However, our inquiry is not so much into the reasons back of the rule or to the origin of it as it is directed to an examination of the facts upon which the issue of Callaghan's diligence must be determined. A further study of the facts has not resulted in a change in our conclusion respecting this issue. On this issue the evidence before the District Court was almost identical with that before the Patent Office and the Court of Appeals for the District of Columbia. The discussion of the quantum and the character of the proof necessary to disturb a finding of the Court of Appeals applies to the issue of diligence with the same force as it did to the issue of priority. The evidence is ample to sustain such finding.

*Appellants' petition for rehearing.* We are asked by appellants not to remand the cause to the District Court for a trial of the issues presented by the counterclaim (validity and infringement of the Callaghan patent) because appellees have, by their pleadings, barred themselves from raising the issue of validity, and, by their admissions, removed all controversy as to their infringement of the patent. We agree with appellants' counsel on both points.

■ Appellees, who have brought this suit to secure to themselves the legal monopoly, which the grant of a patent conveys, and to prevent appellants from enjoying the Callaghan patent, which covered the same product or combination, cannot in this same suit, now that they have lost their suit to obtain the patent, challenge the validity of the patent. The language of this court in Larson, Jr., Co. v. Wrigley, 253 F. 914, 918, is appropriate: "In such a situation, the rule, in our judgment, is this: In a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testimony, unless the court can find an absolute demonstration from other evidence in the case or from facts within judicial notice, like the laws of physics, etc., that under no circumstances could the averments and admissions be true. This is in analogy to the rule respecting the sustaining of a demurrer to a bill for infringement of a patent on account of the invalidity of the patent on its face. Westrumite Co. v. Commissioners, 174 F. 144, 98 C. C. A. 178; Lange v. McGuinn, 177 F. 219, 101 C. C. A. 389."

To the large list of cases collected in this opinion might be added the case of Landis Tool Co. v. Ingle (C. C. A.) 286 F. 5.

Likewise on the issue of infringement, there is no controversy in fact.

■ It would, therefore, be contrary to our practice [City and County of Denver v. N. Y. Trust Co., 229 U. S. 123, 33 S. Ct. 657, 57 L. Ed. 1101; North Carolina R. R. v. Story, 268 U. S. 288, 45 S. Ct. 531, 69 L. Ed. 959; Alwood v. Lewis (C. C. A.) 254 F. 810; Unkle v. Wills (C. C. A.) 281 F. 29; Harrison v. Clarke (C. C. A.) 182 F. 765; Susquehanna Coal Co. v. Pratt & Young (C. C.

A.) 276 F. 919; Sapulpa Petroleum Co. v. McCray (C. C. A.) 4 F.(2d)· 645, 647; American Central Ins. Co. v. Harmon Knitting Mills (C. C. A.) 39 F.(2d) 21; Highland Glass Co. v. Schmertz Wire Glass Co. (C. C. A.) 178 F. 944] to remand a cause to the District Court for trial of issues over which there is no dispute or concerning which the losing party is estopped to further contest. The directions for a mandate must, therefore, be modified and the same are modified to read as follows:

The decree of the District Court is reversed, with directions to enter a decree enjoining appellees from infringing the patent described and designated in appellants' counterclaim, and for an accounting for damages sustained or profits lost by reason of appellees' infringement of said patent.