*W. W. FLEMMING and others v. G. M. ROBERTS and others.

*Final decree, how impeached—Sale of Land under decree, rights of purchaser—Guardian and Ward.*

1. A decree which decides the whole merits of a case without any reservation for further directions for the future action of the court, is final, and can only be set aside or impeached by a civil action in the nature of a bill of review, in which some error on the face of the decree or matter since discovered is alleged.

2. Land sold under decree of court is held *in custodia legis* as a security for the purchase money, and when that is paid the purchaser ordinarily has a right to a deed as a matter of course and without an order to make title.

3. A guardian instituted and conducted proceedings to sell the land of his wards without fraud or imposition; a commissioner sold the same

*SMITH, C. J., did not sit on the hearing of this case.

and took note for purchase money; an arrangement was subsequently made at the instance of the guardian with the sanction of the court and in the interest of the wards, by which the "sale note" was exchanged and surrendered for one executed to the guardian by the purchaser with good security; and thereupon the court ordered title to be made by the commissioner, in pursuance of which a deed was executed to the purchaser from whom through mesne conveyances the defendant acquired title for value and without notice of any alleged irregularities in said proceedings; *Held* in an action to subject the land to the payment of the purchase money (the makers of the note being insolvent) the defendant acquired a good title, and the redress of the wards if any is against the guardian.

(*Eure* v. *Paxton*, 80 N. C., 17; *Thaxton* v. *Williamson*, 72 N. C., 125; *Covington* v. *Ingram*, 64 N. C., 123; *Simms* v. *Thompson*, 1 Dev. Eq., 197; *Lord* v. *Beard and Merony*, 79 N. C., 5 and 14; *Brown* v. *Coble*, 76 N. C., 391; *Singeltary* v. *Whitaker*, Phil. Eq., 77, cited, distinguished and approved.)

CIVIL ACTION and MOTION in the cause heard at Fall Term, 1879, of BUNCOMBE Superior Court, before *Graves, J.*

The two cases between the same parties touching the same subject matter, being treated as one action, were tried together.

One case was an independent action brought by the plaintiffs to impeach a decree of the court of equity rendered in a cause then depending, where the plaintiffs as heirs at law of Samuel Flemming had filed a petition by their guardian, James H. Greenlee, (the petitioners being infants) for the sale of a lot of land in the town of Asheville, alleging that the land had been sold, bonds taken for purchase money, sale reported and confirmed, and a deed made to the purchaser by the clerk and master without any order of the said court authorizing him to make title; that no part of the purchase money has ever been paid, the bonds given by the purchaser had been surrendered, and other bonds taken by the guardian in their stead without authority, and the obligors thereof have become insolvent; and they ask that they may have a lien upon the land to

secure the payment of the purchase money and that the land be sold for that purpose and the costs of action.

The other was a petition in the suit in equity, setting forth the facts that a petition had been filed in the court of equity for Buncombe county in the year 1855, by the plaintiffs as heirs at law of Samuel Flemming for the sale of a lot in the town of Asheville; that they were all infants of tender years and brought the suit by their guardian, Jas. H. Greenlee; that the master was ordered to make sale of the lot, and in pursuance thereof the property was sold on the 12th of April, 1856, when James B. Rankin and Robert H. Chapman, junior, became the purchasers at four thousand dollars and gave their notes for the same with Robert Helt Chapman and James A. Patton as sureties; that the master made a report of the sale in due form which was confirmed by decree of court, in which the master was directed not to collect the purchase money until ordered to do so, and to withhold the title until the purchase money was paid; that John and Greenlee Flemming have since died without issue, and Mary Flemming has intermarried with the plaintiff, John Yancey; that the record of said proceedings in the petition for sale has been destroyed by fire, and that the foregoing is a correct statement of said proceedings; that the master has made a deed to said purchasers who afterwards sold and conveyed the premises to George W. Swepson, who conveyed the same to the defendants, that no part of the purchase money has ever been paid, and the master has made the deed without any decree of said court authorizing it; and they ask that the transcript referred to in the record as Exhibit A, of which the foregoing is a correct abstract, may be set up and established as the true record of the proceedings in said cause and that the same be enrolled, and for such other and further relief, &c.

The defendants in their answer admit that the matter

contained in the plaintiffs' Exhibit A is a correct transcript of the equity suit, except in the following particulars: They say that it is not true that the master was directed to retain the title until the purchase money was paid in full, nor is it true that he executed the deed to the purchasers without a decree authorizing him to make title. They aver that the report of the master was confirmed without at that time making any decree touching the collection of the purchase money or passing the title to the purchasers, but that at a subsequent term of the court, a proper decree was made to collect the money and make title; that the guardian, Greenlee, wished to lend out the purchase money, which he did to the said Chapman and Rankin, and took their notes for the same with Robert Helt Chapman and James A. Patton as sureties, which note was perfectly good, and that said guardian being a party to the record applied to the court of equity to sanction and confirm said arrangement, and a proper order to that effect was made and the notes given to the master cancelled and surrendered to the purchasers to whom the master was directed and commanded to make title, and that the costs were paid and the whole case passed from the docket and business of the court in the same manner as other completed business; that long after title was made as aforesaid, the purchaser, Chapman, sold the lot to Swepson who paid for the same full value and in good faith without notice of any defect or supposed defect in the record, and afterwards Swepson conveyed it to defendants who bought in good faith at a fair value and without notice of any defect in the record; that the petitioners came of age more than ten years before this proceeding was commenced, and not until it was discovered that by long delay of the guardian in the collection of said notes and by the disastrous result of the war the makers thereof had become insolvent, was any pretence or suggestion made in regard to defects or irregularities in the record of the equity suit.

At spring term, 1873, it was ordered by the court that the case be referred to W. M. Hardy to ascertain and set up the record in this case alleged to be lost, and report to the next term together with the evidence on which the record is founded, and at the ensuing term the referee filed a report setting out the record in said equity suit substantially the same as that proposed to be set up by the plaintiffs in their petition, and on the hearing it appeared to the court that the report was not full enough, and an order was thereupon made that the case be recommitted to the referee to ascertain and report more fully the record alleged to be lost or destroyed with the evidence thereon. In obedience to this order, the referee submitted additional facts and reported that when the notes for the purchase money became due in the year 1859, one Robert Helt Chapman, Junior, who was at that time solvent, at the request of said Greenlee the general guardian of said infant plaintiffs, executed to Greenlee, as guardian, the note for the principal and interest then due on the sale notes with approved security; that the arrangement was made with full knowledge and sanction and under the direction of the said court of equity in which at spring term, 1859, a decree in the cause was made as follows: " This cause coming on to be heard upon the petition, exhibits, former orders, decrees and reports herein, and it being made to appear that the purchase money is now all due, and James H. Greenlee, guardian of the petitioners, representing to the court that it is desirable and to the interest of the infants to keep said purchase money invested in good interest-bearing securities,and the said Robert Chapman, Junior, having tendered to the guardian his bond for the full amount of the purchase money with the interest accrued thereon, with R. H. Chapman, Senior, and James A. Patton, as sureties, bearing interest from date, and the court being satisfied the said bond is good and that it is to the interest of said infants to invest the money, and all parties therein

connected consenting ; It is now ordered, adjudged and decreed that the said James H. Greenlee, guardian of the said infant petitioners, be and he is hereby permitted to accept from said R. H. Chapman, Junior, the bond aforesaid in satisfaction so received as aforesaid of the amount due upon the purchase notes given to the clerk and master, and that the master surrender and deliver up to said Chapman, Junior, the three several notes executed by him and his sureties for the purchase money at the time of the sale, in order that they may be cancelled ; and it is further ordered and decreed that the master make and deliver to said Chapman, Junior, a good and sufficient deed in fee simple for the land mentioned in the pleadings and purchased by said Chapman as aforesaid, and that said Greenlee, guardian, pay the costs of the proceedings into court, and the record in the proceedings be enrolled, and the cause be not further continued on the docket." The referee also reported that in pursuance of this decree the purchase notes were surrendered by the master to said Chapman, and the latter executed his bond for the entire amount due thereon, with R. H. Chapman, Senior, and James A. Patton, as sureties, to said Greenlee as guardian, the deed was made as ordered, the costs paid, and the cause removed from the docket and finally disposed of.

There were several exceptions taken by the plaintiffs to the report, which, upon the hearing were overruled and the report confirmed (except that part saying, " and money be paid into court "), and the court found and declared that the record set out in the reports of the referee, as amended, is the record of the court of equity in the case of W. W. Flemming and others, by their guardian, Greenlee, for the sale of real estate in the town of Asheville. From which ruling the plaintiffs appealed to the supreme court where the case was heard at June term, 1877, and the ruling below sustained. *Flemming* v. *Roberts,* 77 N. C., 415.

At fall term, 1879, there was an order in the cause that notice issue to the defendants and to said Swepson to appear before the court and show cause why the purchase money alleged to be due on the sale of the said real estate should not be paid, or a resale ordered to pay it. Service of this notice was accepted by defendants' attorney, and thereupon the court ordered that the cause be reinstated on the docket —overruling the defendants' objection that the same had been regularly disposed of by final decree—and on plaintiffs' motion adjudged that it be referred to the clerk of the court to state an account of the purchase money due under the former decree of sale, if any, and report to the ensuing term, together with any other facts touching the matter in controversy between the parties, which may be deemed necessary by either to the maintenance of his rights in the premises. From this ruling the defendants appealed, and from the judgment dismissing the independent action the plaintiffs appealed.

*Messrs. Reade, Busbee & Busbee,* for plaintiffs.
*Messrs. James H. Merrimon* and *Merrimon & Fuller,* for defendants.

ASHE, J. The two cases were considered together in the court below and were discussed in this court as one case, and we will so continue to treat them.

The record of the proceedings of the petition in the court of equity has been ascertained and established by the report of the commissioner appointed by the superior court of Buncombe for that purpose, and it appears from the record that that suit had been finally disposed of and put off the docket. The record as set forth by the commissioner states, it was ordered, adjudged and decreed that the clerk and master make and deliver to Robert H. Chapman, Junior, a good and sufficient deed in fee simple for the land purchased by

him as aforesaid, and that the guardian pay the costs of the proceeding into court and the cause be not further continued on the docket. This was a final determination of the cause, expressed in unmistakable language. But aside from the unambiguous terms in which the determination of the cause is expressed, where a decree decides the whole merits of a case without any reservation for further directions for the future judgment of the court, so that it will not be necessary to bring the case again before the court, that constitutes a final decree; and after it has been pronounced, the cause is at an end and no further hearing can be had. *Bebee* v. *Russell,* 19 How., 285; Adams Eq.. 388. In the case before us, there was nothing further to be done; there were no further questions or directions reserved for the future action of the court, and it was therefore ordered to be put off the docket and consigned to the shelves of finished business.

The fact being established that the decree in the equity suit was final, it follows that the remedy adopted to set it aside by a petition in that cause cannot be sustained. It can only be set aside or impeached by a civil action commenced by summons and complaint. *Eure* v. *Paxton,* 80 N. C., 17; *Thaxton* v. *Williamson,* 72 N. C., 125; *Covington* v. *Ingram,* 64 N. C., 123.

The plaintiffs however say they have prepared for a failure in this particular, by their other action pending in the same court (and considered with this) which is a civil action commenced by summons and complaint. The ground assigned for relief in that case is that the purchase money has never been paid, that the guardian took the note of the purchaser, Chapman, payable to him as guardian in lieu of the notes given to the master, without any authority so to do, and that the original notes were surrendered to the purchaser and a title to the land made to him by the master, without any order of the court authorizing him to make title.

Upon the state of facts set forth in the plaintiffs' complaint, it being made to appear that the suit in equity had not been determined but was still pending, His Honor dismissed the action on the ground that plaintiffs' remedy was by motion in the original cause. This would have made it unnecessary to give further consideration to the case, but for the fact that the other case, when the motion was made in the original suit in equity, was considered in connection with this, as constituting one case; and but for the further fact that the record of the proceedings in the equity suit was established in that case, and the fact is made to appear that there was a final decree in that cause. This independent action must then be viewed as an action in nature of a bill of review to impeach the decree in that case. The only two grounds upon which a bill of review will be entertained under the former equity practice, were, first, for some error apparent on the face of the decree; and secondly, for new matter since discovered. *Simms* v. *Thompson*, 1 Dev. Eq., 197. Treating this as an action in nature of a bill of review, it cannot be sustained, for it alleges no error on the face of the decree, nor does it disclose any newly discovered facts, and might therefore have been properly dismissed on that ground.

But stripping the cases of all technicalities and considering them on their merits, they are found to be different from any case that has been cited on either side of the question.

Unquestionably, when a decree is made by a court of competent jurisdiction for the sale of real estate, the court having cognizance of the case brings the land, as it were, *in custodia legis* and continues to hold control over it until the final disposition of the cause by the payment of the purchase money and execution of the deed to the purchaser by the regular order of the court. *Lord* v. *Beard* and *Merony*, 79 N. C., 5 and 14. The principle decided in these cases and others we might cite, is, that the court takes and

holds control over the land sold under its decree, as a secu-rity for the purchase money. After payment of the pur-chase money, an order to make title is not necessary, and a deed made without such an order passes the title. "The withholding the title after a sale has been confirmed can have no other object than to secure the purchase money, and when that is paid, the purchaser in the absence of special circumstances has an absolute right to a conveyance of the legal estate." *Brown* v. *Coble*, 76 N. C., 391. The withholding the title until the purchase money is paid is a matter lying in the discretionary powers of the courts and to be exercised by them for the benefit of the parties before them, especially where they are infants—the courts in their equitable jurisdiction being the general guardian of infants. They have control over the whole matter—the subject of the action as well as the persons of the parties—and must have the power to order an exchange of notes and decide how and in what manner payments should be made, and to order a title to be made, though there was no other payment than an exchange of notes, intended as a payment and so regarded by the court; and the purchaser would get a good title.

In our case there was no pretence of fraud or imposition. The transaction in regard to the exchange of notes was made at the instance of the guardian and was supposed by him as well as by the court to be an arrangement for the benefit of the infants. If the money had been paid into the office, the guardian would have received it and loaned it out at once to some one upon good security. He was willing the purchaser should have the money who offered good security. Where was the use of paying it to the clerk and master and the guardian receipting for it and paying it back to the purchaser? This arrangement was made by the express authority and sanction of the court as protect-ing the interests of the infants, and it was evidently in-

tended the new notes should be in satisfaction of those originally given.

This case is dintinguished from *Singeltary* v. *Whitaker*, Phil. Eq., 77, and *Lord's cases, supra,* for in those cases there was no order to make title, but in this case there was an order that title should be made. It was made. It passed the legal title, which the defendants now hold was purchased for value and without notice of any defect in the title. The plaintiffs have lost the proceeds of the sale, and their redress if they have any is against their guardian. They have no equity against the defendants.

Both proceedings, the petition and action, must be dismissed at the costs of the plaintiffs.

Error.                                                  Dismissed.