## NORTH CAROLINA RAILROAD COMPANY *v.* STORY, SHERIFF OF ALAMANCE COUNTY, NORTH CAROLINA, ET AL.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 322. Argued April 14, 1925.—Decided May 25, 1925.

1. A judgment of a state supreme court affirming the refusal of a lower court to continue a temporary restraining order and to grant a permanent injunction on the petition and answer, and leaving nothing for the lower court to do but dismiss the petition, *held* a final judgment and reviewable by certiorari under Jud. Code § 237, as amended September 6, 1916. P. 291.

2. An appellate court, upon an appeal from a temporary or interlocutory order or decree, has power, under general equity practice, to examine the merits, if sufficiently shown by the pleadings and record, and, upon deciding them for the defendant, to dismiss the bill. *Id.*

3. A judgment not appealed from, however erroneous, is *res judicata*. P. 292.

4. Section 206 (g) of the Transportation Act of 1920, providing: " No execution or process . . . shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of any railroad or system of transportation by the President under Federal control," does not prevent judgments in the cases specified but 'protects the carrier's property from execution under them. *Id.*

5. A decision by a state supreme court that a judgment recovered against a carrier for personal injuries suffered while its railroad was under federal control conclusively established the right to recover a second judgment in an action on the first, is not a decision that the first judgment established plaintiff's right to levy execution on the carrier's property notwithstanding § 206 (g) of the Transportation Act. P. 293.

6. The reasoning and opinion of a court are not *res judicata* unless the subject matter be definitely disposed by the decree. P. 294.

187 N. C. 184, reversed.

CERTIORARI to a decree of the Supreme Court of North Carolina affirming a decree which refused relief by injunction against the levy upon the Railroad's property of an execution to satisfy a judgment based on another judgment, which last had been recovered in an action against the railroad for personal injuries. See also 184 N. C. 442.

*Mr. S. R. Prince,* with whom *Messrs. H. O'B. Cooper, W. M. Hendren* and *L. E. Jeffries* were on the briefs, for petitioner.

*Mr. Chapin Brown,* with whom *Messrs. Robert C. Strudwick* and *William P. Bynum* were on the briefs, for respondents.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The questions in this case are two. One is of our jurisdiction to issue the writ of certiorari to review a judgment of the Supreme Court of North Carolina, and turns on its finality. The second is whether a judgment of that court against the North Carolina Railroad Company for injuries caused by the operation of the road by the United States will bar a suit by the Company to enjoin the execution of such judgment against its property under § 206 (g) of the Transportation Act of 1920 (c. 91, 41 Stat. 456, 462). The relevant part of the section reads as follows:

" No execution or process . . . shall be levied upon the property of any carrier where the cause of action on account of which the judgment was obtained grew out of the possession, use, control, or operation of any railroad or system of transportation by the President under Federal control."

Maggie Barber was killed in North Carolina by a collision between a locomotive of the Southern Railway

55627°—25——19

Company and an automobile in which she was riding. It was on the line of the North Carolina Railroad Company, then under a long lease to the Southern Railway Company. King, the administrator of the deceased, sued the North Carolina Company, in the Superior Court of Guilford County, charging negligence by defendant's lessee. The defendant by answer denied that the death was caused by the negligence of its lessee or its employees, because the railroad was then being operated by the Director General of Railroads. The jury returned a verdict for $2,500 and judgment was entered. An appeal was attempted but was not perfected, due, it is said, to the illness of counsel. Without seeking execution, the administrator instituted a second suit, based on the first judgment, averring that it was unpaid. The Company by answer set up § 206 (g), above quoted, as a defense, and averred that the second suit was brought to evade the section. The plaintiff demurred, on the ground that the first judgment had become *res judicata*. The court rendered judgment with interest and further costs. The Company appealed, and the judgment was affirmed. 184 N. C. 442. The Company opposed execution in the lower court, and excepted to the order directing it to Story, the Sheriff of Alamance County, to be levied upon certain real estate of the Company in that county.

The Company then brought the present action based on § 206 (g) in the Superior Court of Guilford County against Story and the administrator, seeking to enjoin permanently the execution. The defendants answering admitted the execution but pleaded the second judgment as *res judicata*. The Company secured a temporary restraining order and a rule on the defendants to show cause why the temporary order should not be continued and made permanent. On hearing, the motion to continue the order and make it permanent was denied. The court, pending plaintiff's appeal, stayed the execution

upon the giving of bond, while the plaintiff was taxed
with the costs of the case.  On appeal, the action of the
lower court was affirmed by the Supreme Court.  187
N. C. 184.  This Court then granted a certiorari and
brought the case here.  264 U. S. 579.

Section 237 of the Judicial Code, as amended by the Act
of September 6, 1916, c. 448, 39 Stat. 726, provides that
final judgments of the highest court of a State are subject
to review by certiorari.  Is this judgment a final judg-
ment?  We think it is.  In its terms it affirms the re-
fusal of the lower court to continue the temporary order
and to grant a permanent injunction.  The Supreme
Court based its decision on the facts admitted in the peti-
tion and answer.  Its judgment was that the previous
judgment as between the parties was *res judicata*, es-
topped the Company from resisting execution and thereby
deprived it of any right to either a temporary or perma-
nent injunction.  Injunction was the only relief which
the Company sought or could seek under its petition and
prayer.  The affirmance of the judgment of the lower
court upon the certified opinion of the Supreme Court,
left nothing for the Guilford County Court to do but to
dismiss the petition.  Something is said about other
issues raised by the administrator in his answer; but the
ruling of the Supreme Court ignored them and disposed
of the case in his favor.  Such a decree is a final decree.
*Chesapeake & Potomac Telephone Company* v. *Manning,*
186 U. S. 238; *Mower* v. *Fletcher,* 114 U. S. 127; *Com-
missioners* v. *Lucas, Treasurer,* 93 U. S. 108; *Flemming*
v. *Roberts,* 84 N. C. 532, 539.  See also *Forgay* v. *Con-
rad,* 6 How. 201; *Bronson* v. *Railroad Company,* 2 Black,
524; *Beebe* v. *Russell,* 19 How. 283; *Crosby* v. *Buchanan,*
23 Wall. 420; *Thomson* v. *Dean,* 7 Wall. 342.  Compare
*Headman* v. *Commissioners,* 177 N. C. 261.

It is said that the judge of the lower court to whom the
application for the continuance of the temporary injunc-

tion and the granting of a permanent injunction in this
case had been referred by the regular judge of Guilford
County, was a judge of a court of another county, and had
by the practice of the State no power to grant a perma-
nent injunction, and so that the appeal from his order
denying the application to continue the temporary injunc-
tion did not bring to the Supreme Court for its decision
the question of the issue of a permanent injunction. The
report of the case in the Supreme Court shows it as one
presenting the question of an application to continue the
temporary injunction and to make it permanent, and,
whatever the power of a judge of a court in another county
in North Carolina to allow a permanent injunction in his
court, we must assume from the action of the Supreme
Court, and the recital of what was before it, that it
intended the Guilford County Court on the coming down
of its mandate to terminate the case by following its opin-
ion. By the ordinary practice in equity as administered
in England and this country an appellate court has the
power on appeal from a temporary or interlocutory order
or decree, to examine the merits of the case if sufficiently
shown by the pleadings and the record and upon deciding
them in favor of the defendant to dismiss the bill and save
both parties the needless expense of further prosecution
of the suit. *Smith* v. *Vulcan Iron Works,* 165 U. S. 518,
523, 524, and cases cited; *Denver* v. *New York Trust Co.,*
229 U. S. 123; *Meccano Ltd.* v. *John Wanamaker,* 253
U. S. 136, 141. We think we have jurisdiction.

Coming now to the merits, it may be conceded that the
first judgment against the Company in favor of the admin-
istrator, however erroneous it was in view of the cases of
*Missouri Pacific Railroad* v. *Ault,* 256 U. S. 554, and *North
Carolina Railroad Company* v. *Lee, Administrator,* 260
U. S. 16, not having been appealed from was *res judicata.*
Nor could § 206 (g) prevent the second judgment. It was
not directed against judgments. It was intended to pro-

tect the property of the Company not by preventing a judgment but by preventing an execution to satisfy a judgment for injury by Government operation of its road, whether that judgment was rendered against the carrier which leased the road, against the carrier which owned the road, or against the Government itself. The language of the statute assumes the existence of judgments against carriers for fault of the Government management before the section comes into play. There had been so much diversity of practice as to the person against whom the judgment should be rendered in seeking to establish and collect claims for injuries caused in government operation that Congress adopted this unusually broad method of rendering the property of the carriers immune. By virtue of a law of Congress plainly within its power, a distinction was thus made between the judgment and the execution. The state Supreme Court decided that the right to a judgment as between the plaintiff and the Railroad Company in the second case was established by the first judgment, not that a right to execution thereon was established. 184 N. C. 442.

After considering the contention made by the Company against the right to a judgment because of § 206 (g), the court said (page 448):

" It might suffice to say in answer to this position that plaintiff thus far has not undertaken to levy any process or execution against the property of the defendant road, and his proceeding, therefore, does not come within the literal terms of the provision on which he here relies, but inasmuch as the answer contains averment that plaintiff is wrongfully seeking in this present suit to avoid the force and effect of the statutory provision just quoted, we consider it pertinent to say that in our opinion the judgment sued on does not come within the inhibition as stated."

The Court then proceeded to consider § 10 of the Federal Control Act, 40 Stat. 456, and paragraphs A, B, C,

D, E, and G of §. 206 of the Transportation Act of 1920, and to hold that the former was a prohibition against physical interference by third persons, creditors or others, while the road was in the possession of the Government, and that the latter was a protection of the carriers in possession from physical interference by actions or judgments provided and allowed for by the Government. " But," said the Court, " this legislation in our view was never intended to protect the carriers from judgments in independent suits by claimants when they have failed to plead or properly insist on the immunity from liability which had been provided for their protection." In effect, the Court gave two reasons for its conclusion, the first of which was that it was not dealing with an execution and the second that § 206 (g) did not apply to either a judgment or an execution in a case like the one before it. But the point adjudged was not the effect of § 206 (g) on an execution, whatever the inference from the Court's reasoning. The estoppel of the Court's conclusion reached only the judgment

It is well settled that the principle of *res judicata* is only applicable to the point adjudged and not to points only collaterally under consideration, or incidentally under cognizance or only to be inferred by arguing from the decree. *Hopkins* v. *Lee*, 6 Wheat. 109, 114; *Norton* v. *Larney*, 266 U. S. 511, 517. The reasoning and opinion of the court are not *res judicata* unless the subject matter in issue be definitely disposed of by the decree. *Keane* v. *Fisher*, 10 La. Ann. 261; *Bridges* v. *McAlister*, 106 Ky. 791; *Probate Court* v. *Williams*, 30 R. I. 144; *Scottish-American Mortgage Company* v. *Bunckley*, 88 Miss. 641; *Braun* v. *Wisconsin Rendering Company*, 92 Wis. 245; *Citizens Bank of Emporia* v. *Brigham*, 61 Kan. 727.

The judgment of the Supreme Court of North Carolina is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*