**T. J. MOSS TIE CO. v. WABASH RY. CO.**

**CONROY v. AMERICAN SURETY CO. OF NEW YORK et al.**

No. 5169.

Circuit Court of Appeals, Seventh Circuit.

May 29, 1934.

Rehearing Denied June 21, 1934.

Charles C. Spencer and Matthew J. O'Brien, both of Chicago, Ill., for appellant.

N. S. Brown, of St. Louis, Mo., and Meyer Morton, Erwin W. Roemer, and Louis L. Dent, all of Chicago, Ill., for appellees.

Before ALSCHULER, SPARKS and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellant, Conroy, appeals to reverse an order of the District Court granting a preliminary injunction restraining him from enforcing a judgment for $30,000 awarded in the superior court of Cook county.

Conroy was a switchman employed by the Wabash Railroad. While riding upon the front end of a switch engine standing on the footboard and holding onto the handrail while the engine was in a forward motion, he claimed that a "re-railer" or "frog" which had been permitted to ride upon the front end or deck of the locomotive fell against his hand, causing him to fall from the footboard. Serious injury was claimed. Later he sued to recover damages. The jury returned a verdict in his favor upon which judgment was entered. The cause was appealed to the Illinois Appellate Court, First District, where it was considered, and, after ordering a remittitur, the judgment was affirmed, on November 23, 1932. A petition for rehearing was filed and denied. A petition for writ of certiorari in the Illinois Supreme Court was filed January 18, 1933, and denied. A petition for writ of certiorari in the Supreme Court of the United States was denied by that court October 9, 1933, 54 S. Ct. 50, 78 L. Ed. —.

The original judgment was against the Wabash Railway Company. Pending the litigation, the road went into receivership, and on October 20, 1933, the receivers filed a petition in the District Court of the United States to enjoin Conroy from the collection of the judgment of the superior court of Cook county and to set aside the judgment and enjoin the surety company from paying the judgment pending the suit.

The basis assigned was that there were in fact no rerailers on the front end or deck of the switch engine, at the time of the alleged accident, and that appellant and one of his witnesses, Lutman, committed perjury upon the trial of the case in the superior court of Cook county in testifying that the rerailers were there at the time in question; that Conroy committed perjury in stating that one of them caused him to fall from the footboard, and that the perjury of appellant and the witness Lutman was committed in pursuance

of a conspiracy entered into by appellant, his brother, one J. T. Egan, Lutman, and one of Conroy's attorneys. The petition alleges that the railway company did not know of the existence of the alleged conspiracy until December 15, 1932, when two of the alleged conspirators, Lutman and Egan, informed the company "of the existence of the said conspiracy and the exact terms thereof."

Upon the filing of the intervening petition, the receivers made a motion for a preliminary injunction against Conroy from enforcing the judgment of the superior court and restraining the American Surety Company, which was surety on the appeal bond given in the superior court by the railroad company on its appeal from the judgment, from paying such judgment to Conroy. A counter motion to dismiss the intervening petition was made, and both motions were denied by the District Court on January 4th. Conroy was ruled to answer. He filed a verified answer denying all of the material allegations in the petition, including the alleged conspiracy or false testimony given on the trial by plaintiff, or on his behalf, in the state court. The surety company filed its answer and cross-petition, the latter reciting that Conroy had brought suit against it upon the appeal bond, and that it was returnable in the superior court of Cook county, February 5, 1934. The cause was heard on January 26, 1934, on the petition and the answers and cross-petition of the surety company, with the resulting order that Conroy be enjoined from prosecuting this surety company until the final disposition of the intervening petition and until the further order of the court.

Conroy, plaintiff below, and Lutman, another switchman, both testified upon the trial in the state court that the rerailers were there and there was some circumstantial evidence corroborating the testimony of Conroy and Lutman, consisting of the testimony of several witnesses that the back of Conroy's left hand, after the accident, was injured and lacerated in such a manner as to indicate that it had been struck with a hard instrument. In refutation of this evidence, the railroad company offered the testimony of one Adams who testified that he looked at the front of the engine, a few minutes after the accident happened, for the "very purpose of ascertaining if there were any rerailers there, and that there were no rerailers there." Adams said he had this very thing in mind when he went to the front of the engine and looked at it. The Illinois Appellate Court has authority to, and it did, consider the facts in this case. The opinion filed in that case shows

that the court did give the facts, including the alleged false testimony of Lutman, very full and detailed consideration. It is shown by the pleadings that, after the accident in question, representatives of the railroad company sought and procured from Lutman three statements. In the first three he said nothing about the rerailers, but the agents of the railroad, still believing that he was a valuable witness on either side, endeavored to procure a statement from him as to what he was going to testify, but were unsuccessful. About two weeks before the trial, however, they secured an oral statement from Lutman to the effect that he would testify that he had seen the two rerailers on the front deck of the engine on the night of the accident, after the accident. The company tried to induce Lutman not to give this testimony, but failed. Thereafter the "Railway Company exhausted every means and took every step within its power to prove the falsity of such statement."

After the trial, in December, 1932, Lutman was living at Afton, Iowa, and came into Chicago on business. His affidavit concerning that visit, which is set out in Conroy's answer, is made on the 24th of February, 1933, for the purpose of refuting a statement which had been procured from him in St. Louis as to the character of his testimony upon the trial of this case in the state court. He said that, upon coming to Chicago, "I met John T. Egan, who I have known for the last two or three years. He invited me to take a few drinks with him and we went on a spree and were drunk for two days in Chicago, and Egan suggested going to St. Louis to finish it up. Egan paid for the whole spree including the transportation to St. Louis and back again to Chicago. After starting to sober up in St. Louis I asked Egan what we had done and where we had been, and he told me that we had been up at the Wabash office and that I had made a statement conflicting with the testimony that I gave in the case of T. P. Conroy v. Wabash Railroad. I asked what it was, and all he would tell me was that I didn't say anything that would really hurt me. I wanted to go back up to the Wabash office to see what the statement was that I had made and he talked me out of it, saying that he was getting some money out of it. This was still in the latter part of December, 1932, at St. Louis, Missouri." He then stated he did not know what was in the statement; that he signed while he was drunk; that, if he made any statement that was in conflict with his testimony on the trial, the statement was made while he was under the

influence of liquor. He then reaffirmed his testimony given at the time of the trial.

There can be no controversy that the question as to the rerailers being on the deck of the switch engine just before and after the accident was one of the chief issues at the trial of the cause in the superior court of Cook county, and that the question was submitted to the jury, which must have found that the rerailers in question were on the deck of the switch engine as charged by Conroy. The evidence upon this subject was fully considered and discussed by the Appellate Court and its judgment in affirming a judgment of the superior court of Cook county was final as to the facts in that case.

This case must be ruled by United States v. Throckmorton, 98 U. S. 61, 68, 25 L. Ed. 93, which has been the controlling case upon the subject for more than a half century. That was a suit to set aside the confirmation of a claim of one W. A. Richardson under a Mexican grant to land made by the board of commissioners of private land claims in California. It was an action upon the part of the government against the then title holders under the grant which had been procured through fraud. After considering all of the authorities, both English and American, the court, discussing the opinion of Chief Justice Shaw in Greene v. Greene, 2 Gray (Mass.) 361, 61 Am. Dec. 454, said:

"The Chief Justice says that the court thinks the point settled against the complainant by authority, not specifically in regard to divorce, but generally as to the conclusiveness of judgments and decrees between the same parties. He then examines the authorities, English and American, and adds: 'The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted.' It is otherwise, he says, with a stranger to the judgment. This is said in a case where the bill was brought for the purpose of impeaching the decree directly, and not where it was offered in evidence collaterally. We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In an effort to make this well-established authority inapplicable to appellant's contention, in addition to the allegation that the judgment in the state court was procured through perjury and false swearing, there is the additional charge that there was a conspiracy entered into between appellant, his brother, one Egan, and the witness Lutman, together with an attorney, to have Lutman testify that the rerailers were on the deck of the switch engine. In practically every case of perjury or false swearing discussed in the books, it is quite the rule to find that the alleged false swearing or fraud grows out of a conspiracy to some extent. In U. S. v. Throckmorton, supra, the statement of fact of the Supreme Court shows that the fraud there practiced, and for which a bill similar to the petition in this case was filed for relief, was in fact predicated upon a conspiracy. This is shown by the following paragraph: "The specific act of fraud which is mainly relied on to support the bill is, that after Richardson had filed his petition before the board of commissioners, with a statement of his claim and the documentary evidence of its validity, March 16, 1852, he became satisfied that he had no sufficient evidence of an actual grant or concession to sustain his claim, and with a view to supply this defect, he made a visit to Mexico, and obtained from Micheltorena, former political chief of California, his signature, on or about the first day of July, 1852, to a grant which was falsely and fraudulently antedated, so as to impose on the court the belief that it was made at a time when Micheltorena had power to make such grants in California; and it is alleged that in support of this simulated and false document he also procured and filed therewith the depositions of perjured witnesses."

Chief Justice Taft said in Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399, 43 S. Ct. 458, 464, 67 L. Ed. 719: " * * * We have been cited to no case where it has

been held that fraud is extrinsic when the court rendering the decree attacked had before it the same issue of fraud on the same facts, only a little more elaborated as to the motive of the party charged with committing it. * * * We cannot know what the result of the hearing would have been on this issue if tried, because only one side is presented. We are prevented from knowing it by a most salutary rule of law which, after parties have had a full and fair opportunity to prepare their case, refuses to permit them to drag out litigation by bringing in new evidence which with due diligence they ought to have discovered before the hearing. The apparent hardship of particular cases should not and cannot weigh against the application of this sound principle. As Mr. Justice Story remarked in Ocean Insurance Co. v. Fields, 2 Story, 59, 18 Fed. Cas. 532, No. 10,406: 'It is for the public interest and policy to make an end to litigation, or, as was pointedly said by a great jurist, that suits may not be immortal, while men are mortal.'"

This appeal is from the order of the court after denying appellant's motion to dismiss the receivers' petition, granting the preliminary injunction prayed for in the cross-petition of the surety company. The whole record is before us. By the ordinary practice in equity as administered in England and this country, an appellate court has the power on appeal from a temporary or interlocutory order or decree to examine the merits of the case, if sufficient is shown by the pleadings and the record, and, upon deciding them in favor of the appellant, to dismiss the bill and save both parties the needless expense of the further prosecution of the suit. North Carolina Railroad Co. v. Story, 268 U. S. 288, 292, 45 S. Ct. 531, 69 L. Ed. 959.

As to the merits as shown by the pleadings. The judgment of Conroy was entered in the superior court of Cook county, an appeal was prosecuted to the Appellate Court and there affirmed, and the holding of that court was absolutely final as to the facts in that case. Applications were made to both the Illinois Supreme Court and the United States Supreme Court for writs of certiorari and denied by those courts. So that the issues between the parties were tried and, upon the judgment entered, every right of the defendant for a review, in that case provided by law, has been exhausted. The judgment is res adjudicata.

This is an effort to have a federal court of equity set aside the judgment of the state court upon the claim of the discovery of new evidence with which to attack the credibility of the chief witnesses in the original trial. This additional evidence, if offered at the trial and if true, would simply have added to the evidence originally considered by the jury in determining the credibility of appellant, plaintiff in the original suit, and his chief witness, Lutman. Even though the receivers could successfully maintain the allegations of their intervening petition, they are not entitled to the relief prayed.

The motion to dismiss the intervening petition should have been allowed, and the motion by the surety company for the preliminary injunction against the prosecution of appellant's suit to recover on the appeal bond should not have been granted.

The order of the District Court granting the preliminary injunction is reversed, and the cause remanded, with instructions to dismiss the intervening petition and cross-petition.