**MARYLAND CASUALTY CO. v. COX.**

**COX v. MARYLAND CASUALTY CO.**

Nos. 7991, 7992.

Circuit Court of Appeals, Sixth Circuit.

June 7, 1939.

D. H. Hill Arnold, of Elkins, W. Va. (Lee F. Miller, Jr., and Orville S. Martin, both of Johnson City, Tenn., Fred E. Pausch, of Baltimore, Md., and D. H. Hill Arnold, of Elkins, W. Va., and Clarence H. Miller, of Johnson City, Tenn., on the brief), for appellant and cross-appellee Maryland Casualty Co.

F. H. Parvin, of Greeneville, Tenn., George F. Dugger, of Elizabethton, Tenn., and Jos. A. Caldwell, of Bristol, Tenn., for cross-appellant and appellee Cox.

Geo. F. Dugger, Hallie K. Riner, and E. M. Johnston, all of Elizabethton, Tenn., for appellee E. M. Johnston, trustee of C. L. Grindstaff, bankrupt.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

From a suit in equity originally instituted by the United States for the use and benefit of various trustees in bankruptcy who had funds on deposit in a closed national bank, secured by (a) depository bonds, (b) a pledge of collateral belonging to the bank, and (c) a trust mortgage upon real estate given by a personal surety on one of the bonds, there emerges a controversy which involves (1) the right of the appellant as a surety upon a depository bond after payment of its full obligation to be subrogated to the rights of the bankruptcy trustees as secured depositors in the pledged collateral, (2) the extent to which the appellant under its right to subrogation may receive dividends from the insolvent estate, and (3) the right of the appellant to enforce contribution from a personal surety whose real estate was mortgaged as additional

security for the depository bond signed by him.

The facts, though complicated, are not in dispute. The First National Bank of Elizabethton was designated in December, 1928, as a depository for the funds of bankrupt estates in the Eastern District of Tennessee, and to qualify executed a bond in the penal sum of $17,500, with the appellant as surety. In June, 1930, it appearing that further security should be provided, an additional bond in the sum of $60,000, with individual sureties, was furnished by the bank. Some of the signatories later desiring to be released, a new bond in the sum of $60,000 was substituted by the bank on April 14, 1931, under an order of the court providing that the sureties on the first $60,000 bond were not to be relieved of liability for deposits made prior to April 1, 1931. The last bond was signed by individuals connected with the bank as sureties, and simultaneously the bank executed to a trustee an assignment of collateral for the purpose of securing the bond, the assignment providing that it was expressly made to secure the United States of America in the payment of the bond primarily, and to secure the sureties secondarily. At the same time Grindstaff, one of the sureties on the bond, executed a trust deed or mortgage upon real estate to the trustee to further secure the deposits with the bank, the deed providing that in the event the bank or thereafter the grantor failed to pay the deposits on demand, the trustee was authorized to advertise and sell the property.

When the bank was declared insolvent on October 17, 1931, and a receiver was appointed for it, the several trustees in bankruptcy had on deposit therein the sum of $50,065.83. The United States by its bill sought the benefit of the pledged collateral, judgments against the bank and each of its sureties, and prayed that each of the parties be brought before the court to have all rights and equities determined. A receiver was appointed for the pledged collateral, and on September 27, 1932, the court entered its first decree, which was against the bank for the aggregate amount of the deposits, against the appellant for the penalty of its bond, and against each of the personal sureties for the penalty of the $60,000 bond. It fixed a lien upon Grindstaff's real estate to secure the payment of the bankruptcy deposits, and ordered the pledged collateral to be reduced to cash and applied to the satisfaction of the decree against the bank.

The appellant perfected an appeal to this court, which it later dismissed, whereupon the decree of December 22, 1932, was entered, reciting that the appellant had agreed to dismiss its appeal and pay the penalty upon its bond providing that an order be entered subrogating it to the rights of the obligees of the bond, and that the bond be surrendered and marked paid. The decree provided that the appellant be subrogated to the rights of the obligees in the bond, so far as collateral had been deposited by the bank for the security of the deposits, after the deposits had been paid in full and costs of proceedings satisfied. It also provided that the special receiver apply all funds coming to him on account of the disposition of collateral to the payment of the bankruptcy deposits until they had been paid in full, and that the appellant be subrogated to remaining funds or collateral in his hands as security for deposits, as well as to any dividends paid or to be paid by the receiver of the bank on the claims of the bankruptcy trustees. The question of the appellant's rights to contribution against the personal sureties on the bonds was sought to be reserved.

From the avails of the pledged collateral and the payment by the appellant of its obligation, the trustees in bankruptcy have been paid their deposits in full, and after payment of costs there remains in possession of the special receiver the sum of $4,522, together with some unliquidated collateral. The sureties upon the personal depository bonds have paid nothing, and all, including Grindstaff, whose estate is in process of liquidation in bankruptcy, are insolvent.

No effort was made by any of the parties to the litigation to amend or modify the 1932 decrees either during the term of court at which they were entered or during the succeeding term. On September 19, 1933, the appellee sought to set aside certain portions of the December, 1932, decree on the ground that neither he nor his counsel had any knowledge of its entry. The procedural steps that followed by way of amendments to pleadings, motions to strike, and so on, need not now concern us. On November 15, 1937, the court entered its last decree, adjudging the appellant a general unsecured creditor to the extent of $17,500, not entitled to

subrogation to the rights of any other creditors or to contributions from any other sureties, and directing that the surplus cash and collateral remaining from the liquidation of the pledge be turned over to the bank's receiver. This decree further provided that the order of December 22, 1932, having been entered inadvertently and without notice to general creditors, be vacated in respect to the grant therein of subrogation to the appellant.

 The first problem we have to deal with is the effect of the 1932 decrees upon the right of the appellant to be subrogated to the lien of the bankruptcy trustees upon the pledged collateral. The appellee assails the pledge as ultra vires and so invalid upon authority of Texas & Pacific Railway Co. v. Pottorff, 291 U.S. 245, 252, 54 S.Ct. 416, 78 L.Ed. 777, and this is the basis of his cross-appeal. But that question is not before us if there has been an adjudication of the validity of the pledge in a final decree, from which no timely appeal or an respect to which no motion to correct or amend was sought, the applicable principles being that a right, question or fact, distinctly put in issue and determined by a court of competent jurisdiction, cannot thereafter be disputed in a subsequent suit between the same parties or their privies, United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262, and that a judgment not appealed from, even though erroneous, is res adjudicata in a subsequent suit thereon, North Carolina Railroad Co. v. Story, 268 U.S. 288, 45 S.Ct. 531, 69 L.Ed. 959, and this applies to an adjudication of the priority of a lien which is the subject matter of the suit even though the fund is afterward brought into court for final distribution. Bank of Lewisburg v. Hugh Sheffey, 140 U.S. 445, 11 S.Ct. 755, 35 L.Ed. 493. It seems clear that the December, 1932, decree was a complete and final adjudication of the right of the appellant to be subrogated to the lien of the bankruptcy trustees upon the pledged collateral. It is true that no question as to the validity of the pledge was raised or specifically adjudicated, but the opportunity was afforded the appellee to contest. The decree recites that all parties to the suit had notice of the hearing, and under familiar rules this recital is prima facie proof of that fact not to be overthrown save by substantial evidence, of which there is none.

While the decree was entered in a proceeding which involved issues other than those by it determined, it completely adjudicated the right of the appellant to be subrogated to the lien upon the pledged collateral. Had there been no supplemental proceedings to set it aside there could have been no doubt of the authority of the special receiver to turn over the excess collections and collateral to the appellant. The decree in this respect was not mere judicial approval of an administrative order such as was construed in Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83. It adjudicated rights to property in an adversary proceeding of which all parties to the suit had notice. It was beyond the power of the court in 1937 upon a petition filed September 19, 1933, to vacate or amend its decree, for the general rule is that in the absence of a statute providing otherwise a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered unless the proceeding for that purpose was begun during the term. United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129. The liberalization of the rule by Rule 60 of the new Code of Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, even were it presently applicable, does not extend the power of the court to relieve from a judgment or decree on the ground of mistake, inadvertence, surprise or excusable neglect, beyond six months after such judgment or decree. That the unsecured creditors were not notified of the proceedings which led to the decree is unimportant. They were represented by the receiver for the bank, and were not otherwise necessary parties to the litigation. The right of the appellant to be subrogated to the lien of the trustees in bankruptcy in the excess collections and collateral of the pledge must be sustained.

 We pass next to a consideration of the contention that the appellant is entitled to dividends from the insolvent estate not merely as a general creditor of the bank in the sum of $17,500, but as a successor in right to the trustees in bankruptcy, whose claims aggregated $50,065. With this contention we do not agree. It is true that under the equity rule as announced and applied in Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640, a secured

creditor of an insolvent national bank may prove and receive dividends upon the face of his claim as it stood at the time of the declaration of insolvency without crediting his collateral or collections, subject to the proviso that dividends must cease when the claim has been paid in full. See City of Oakwood v. Hartford Acc. & Ind. Co., 6 Cir., 81 F.2d 717. The rationalization is that the collateral is security for the whole debt, and so for every part of it, and is as applicable to any balance that remains after payment from other sources as to the original amount due. As the basis on which all creditors are to draw dividends is the amount of their claims at the time of the declaration of insolvency, it necessarily results for the purpose of fixing that basis that it is immaterial what collateral any particular creditor may have, and the secured creditor may not be compelled to exhaust his collateral before enforcing his direct remedies against the debtor or to surrender it as a condition thereto. It follows from this that all of the pledged collateral was security for the total of the deposits and for each and every part, so that when the appellant indemnified the trustees to the extent of its obligation so to do, the pledged collateral stood as security for the portion of the bank's debt paid by the appellant as it stood for the rest of the debt. It does not follow, however, that the appellant on paying its obligation to the trustees acquired the right to collect the aggregate of their claims against the bank. It is as though the appellant had purchased a part of the debt. It did not pay the whole debt and is not entitled to collect upon the whole debt even though it may subject to its portion of the debt the lien of the collateral which secures every part of it. Had the other sureties cancelled their obligations they too would under the theory of subrogation here advanced be entitled to claim dividends on the aggregate of the deposits. This cannot be the law.

We are not persuaded that the decree of December 22, 1932, adjudicated the right of the appellant to dividends upon the aggregate of the deposits owing to the trustees in bankruptcy. The provision in the decree is that appellant be subrogated "to any remaining dividends paid or to be paid by the receiver of the First National Bank of Elizabethton on the claims filed with him by the trustees in bankruptcy, etc." This provision adjudicates the appellant's right to subrogation but not its extent, and must, we think, be interpreted as adjudicating no greater right to dividends than sound legal principles would permit. In any event, when the claims of the trustees were paid in full their right to collect dividends ceased and their successor in interest may not obtain by subrogation dividends which were not paid and which could not be paid to them. In strict literalness the provision of the decree in this respect is therefore inoperative. We hold that the appellant is entitled to dividends on its claim for $17,500 and no more.

■ The court by its 1937 decree denied the appellant the right to enforce contribution against the personal sureties on the $60,000 indemnity bond on the ground that the appellant's bond was in force at the time they assumed liability, so that their assumption was but to secure the additional deposits which were made subsequent to the Casualty Company's bond, or which might thereafter be made. There is nothing in the record or the several bonds to justify this conclusion. By the terms of the depository bonds they were each given to secure the total of the deposits of the bankruptcy trustees without regard to time. Moreover, the sum paid by the appellant in satisfaction of its obligation was applied, so far as may be determined from the record, indiscriminately to the payment of deposits, whensoever made. There was no allocation of the indemnity to specific deposits. There was error in failing to permit the appellant to enforce contribution from the sureties on the personal bond.

■ Since the personal sureties are all insolvent, the only importance of decision in this respect relates to the right of the appellant to enforce contribution from the trustee in bankruptcy of the estate of Grindstaff, whose real estate was pledged as security for the bond. Since Grindstaff's obligation was joint and several, his total obligation to indemnify was in the penalty of $60,000. The appellant's obligation to indemnify was in the penalty of $17,500. The aggregate penalty is $77,500, of which 23% is applicable to the appellant and 77% to Grindstaff. While the sum exacted as penalty from the appellant will now be restored by the amount of excess collections recoverable under its right to subrogation, this is the result of the adjudication in the December 22nd

decree. There was in that decree no adjudication of Grindstaff's right to subrogation, and it completely disposed of the excess collections. Fulton v. Lloyd's Casualty Co., 6 Cir., 75 F.2d 295, is not applicable since Grindstaff's junior lien on the bank's pledged collateral was subject to the primary lien of the depositors, which passed to the appellant in subrogation, and the appellant receives nothing by way of participation in the junior lien. The appellant should be compensated from the sale of the Grindstaff property to the extent of 77% of $17,500, but not in excess of such amount as with the excess collections and collateral of the pledge and dividends from the insolvent estate will serve to satisfy the total debt to it of the bank.

The cross-appeal is dismissed. The decre is amended to restore appellant's lien upon excess collections and collateral of the pledge and to provide for its enforcement, and to permit appellant to enforce contribution in the ratio indicated against the Grindstaff real estate, and as so amended is affirmed, with costs to the appellant.