674

· AMERICAN UNITED LIFE INS. CO. v.
BLACKHURST et al.

No. 11514.

Circuit Court of Appeals, Eighth Circuit.
Jan. 18, 1940.

James W. Broaddus, of Kansas City, Mo. (Robert A. Adams and G. W. Humphrey, both of Kansas City, Mo., on the brief), for appellant.

Paul S. Kelly and Hale Houts, both of Kansas City, Mo., for appellee Julia S. Blackhurst.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

Julia S. Blackhurst is the daughter and sole heir at law of Louis A. Simons, who died January 6, 1933, and who, for many years prior to his death, had been the General Agent in Kansas City, Missouri, of the American Central Life Insurance Company, now the American United Life Insurance Company. As a third-party beneficiary under a "life service bond" or agreement between her father and the Company, providing for renewal commissions to be paid to him or his beneficiary on life insurance written by his agency, she brought this suit to recover commissions alleged to be due her. The case was tried to the court upon an agreed statement of facts. From a decree for the plaintiff, the defendant Company has appealed.

The controversy is over the liability of the Company to the plaintiff for renewal commissions on life insurance written by the agency of Louis A. Simons during the last year of his life, the second year's premiums on which were not paid during his lifetime, but were paid after his death. The Company contends that such insurance, by the terms of the "life service bond", was not to be used in computing the amount of renewal commissions due the plaintiff as beneficiary.

The first paragraph of the "life service bond" provided as follows: "The American Central Life Insurance Company of Indianapolis, Indiana, hereinafter called the Company, intending, by special rewards continued during the agent's life, to promote the placing on its books of persistent insurance, agrees in appointing you its agent, that additional to the usual compensation by commission hereinafter specified, it will, so long as you work for it and for no other life insurance company, pay to you, and in the event of your death while working for it and for no other life insurance company, will for a period equal to the period of your service, for it, pay to your beneficiary, twelve and one-half dollars at the end of each month of which there is in force fifty thousand dollars of its insurance (paid-up and extended insurance excluded) secured by you directly through agents appointed at your instance and paid for in cash through the second year and twenty-five cents at the same time for each additional thousand dollars of such insurance then in force, * * *."

The District Court, in construing this provision, upon which this controversy turns, said:

"A literal reading of the bond requires the company to pay stipulated amounts to the beneficiary at the end of each month

if there is insurance in force which was (a) secured by Simons and (b) which was paid for in cash through the second year. Grammatically, the phrase, 'paid for in cash through the second year,' refers (as to the time element) to the month in which, under the bond, payments are due to the beneficiary and not at all to the date of Simon's death.

"If, for example, in the month of April in a given year (any year following the death of Simons and prior to the expiration of the life of the bond), there is in force $50,000 of insurance secured by Simons and which, before the beginning of that month, had been paid for in cash through its second year, then the beneficiary is to be paid the amount stipulated in the bond.

"Not only is this interpretation supported by a literal reading of the bond but it is supported also by the obvious purpose of the parties. The second year's premium would not have been paid on any insurance secured by Mr. Simons during the last year of his work for the company, i. e., in the year before his death. A distinction in the compensation to be paid Simons justly cannot be made between the insurance secured during that year and the insurance secured during some preceding year. The work of Simons, for which he was to be compensated, was done when the insurance was secured. The obligation of the company then became fixed under the bond. It was a contingent obligation. The obligation was contingent upon the payment of the second year's premium. When that premium was paid the benefits described in the bond became due. No other interpretation can be reconciled with the declared purpose of the bond which is 'by special rewards *continued during the agent's life,* to promote the placing on its books of persistent insurance.' Rewards certainly are not 'continued during the agent's life' if they do not attach to work done in the last year of his life."

With this construction of the agreement we are in accord. We think it is not reasonably susceptible of any other construction. The contention of the Company that renewal commissions which had not become payable to Louis A. Simons during his life could not thereafter become payable to his beneficiary might have force were it not for the fact that, by the terms of the agreement, he was to have renewal commissions on business which persisted through the second year if he lived, and his beneficiary was to have them if he did not.

The Company contends, however, that it had previously been adjudged that it was not liable to the plaintiff for the commissions claimed, and that she was bound by that adjudication. The plaintiff had sued Rachael A. Johnson, Executrix of the Will of Louis A. Simons, deceased, and others, in the court below, for the purpose of securing a decree that a trust created by the will of her father was invalid. During the pendency of that suit, the Company, as a debtor of the estate and at the request of the executrix, was made a defendant. It filed an answer asserting that the benefits accruing under the "life service bond" to the estate of Louis A. Simons, his legal representatives or trustees, up to and including the last day of March, 1933, amounted to $4,320 calculated upon the theory that the liability of the Company was fixed as of the date of Simons' death (January 6, 1933). It prayed the court to determine the Company's liability with respect to policies secured by or through the Simons Agency and upon which premiums had not been paid through two years at the time of Simons' death. It tendered the amounts which were due and to become due under the bond to the person or persons designated by the court to receive them. The day after the Company filed its answer, the court made an order authorizing and directing it "to pay over the proceeds of said Life Service Bond, which are now due or which may hereafter become due, to Rachael A. Johnson as executrix of the Louis A. Simons estate, and said executrix is hereby authorized to receive same and to receipt therefor for the purpose of administration of said Louis A. Simons estate in accordance with the uncontested provisions of said will, under the direction and guidance of the Probate Court of Jackson County, Missouri at Kansas City; * * *."

Thereafter Rachael A. Johnson, executrix, filed an answer to the answer of the Company. Therein she asserted its liability for renewal commissions on insurance, written by the Simons Agency, upon which the second year's premiums had not been paid at the time of his death, and she prayed that the court determine the rights of all parties under the "life service bond". The issue of the liability of the Company for renewal commissions on such insurance

**676**

was not ruled upon in that case, and the decree subsequently entered therein did not mention or affect it. Hence the question of the liability of the Company for renewal commissions on insurance written by the Simons Agency during the last year of Simons' life, the second year's premiums on which were not paid until after his death, is not res judicata in this suit. Northwestern Port Huron Co. v. Babcock, 8 Cir., 223 F. 479–485; National Surety Co. v. Jenkins, 8 Cir., 18 F.2d 707, 710, and cases cited; Standard Surety & Casualty Co. v. Standard Acc. Ins. Co. 8 Cir., 104 F.2d 492, 495, 496; Maryland Casualty Co. v. Cox, 6 Cir., 104 F.2d 354, 358. Compare American National Insurance Co. v. Yee Lim Shee, 9 Cir., 104 F.2d 688, 693.

The First National Bank of Kansas City, while nominally a party, has no interest in this controversy and was properly discharged by the District Court.

The decree is affirmed.